MARY PERGERSON EARLES v. RALPH W. EARLES

No. 7517DC251

(Filed 16 July 1975)

1. Divorce and Alimony § 8— abandonment — sufficiency of evidence

There was sufficient evidence to go to the jury on the issue of abandonment in this action for divorce from bed and board where there was evidence tending to show that the parties moved into a motel room, defendant moved out of the room while plaintiff was confined in a mental hospital for a week, after being released from the hospital plaintiff asked defendant to return, and defendant refused and has never returned to the plaintiff.

2. Divorce and Alimony § 17— dependent and supporting spouses — determination by court

In an action to obtain alimony upon divorce from bed and board, the trial court erred in submitting to the jury issues of whether plaintiff was the "dependent spouse" and defendant the "supporting spouse" since these issues should be determined by the trial court and not the jury.

3. Divorce and Alimony § 4— failure to instruct on condonation — denial of amendment to allege condonation

In this action for divorce from bed and board wherein only the issue of abandonment was submitted to the jury, the trial court did not err in failing to instruct the jury on condonation where there was no evidence that plaintiff condoned defendant's abandonment; furthermore, any error in the court's refusal to allow defendant to amend his answer to allege condonation was harmless since the only evidence of condonation related to condonation of indignities and the issue of indignities was not submitted to the jury.

4. Divorce and Alimony § 14; Evidence § 12— divorce action — wife's testimony against husband — statements that husband loved another woman

In this action for divorce from bed and board based on abandonment, testimony by plaintiff regarding defendant's statements that he loved another woman and would continue to see her was not ren-

dered incompetent by G.S. 8-56 or G.S. 50-10 since there was no accusation or attempt by plaintiff to prove adultery and the testimony did not tend to show adultery.

**5. Evidence § 12— letters and statements of husband to wife — no confidential communications**

In an action for divorce from bed and board, letters written by defendant to plaintiff and defendant's oral statements to plaintiff that he loved another woman and would continue to see her were not inadmissible as privileged confidential communications between husband and wife where defendant made no specific objection to the admission of statements in the letters and it is clear that the oral statements were not intended to be confidential since defendant made similar statements to several other persons; furthermore, the admission of the letters and oral statements was not prejudicial since they related to the issue of indignities and such issue was not submitted to the jury.

APPEAL by defendant from *Clark, Judge.* Judgment entered 17 December 1974 in District Court, ROCKINGHAM County. Heard in the Court of Appeals 28 May 1975.

Plaintiff instituted this action against her husband on 25 August 1972, seeking permanent alimony, child custody and support, counsel fees and a divorce from bed and board. In her complaint plaintiff alleged abandonment by her husband and "such indignities . . . as to render the plaintiff's condition intolerable." Defendant averred in his answer that plaintiff had abandoned him.

At the trial plaintiff offered evidence tending to show that she and the defendant were married in 1953 and have three children; that throughout the marriage the defendant has been in the Air Force, and until May 1971, plaintiff and the children travelled with him from one assignment to another; that in May 1971, defendant was scheduled to retire from the Air Force in two years and he and the plaintiff purchased a home in Ruffin, North Carolina, and decided that the plaintiff and the children would live in Ruffin for the next two years, rather than continuing to travel with the defendant. Other evidence offered by the plaintiff tended to show that in March 1972, while he was stationed at Barksdale Air Force Base in Louisiana, the defendant telephoned plaintiff and told her that although he still cared for her, he had fallen in love with another woman; that from March 1972, until August 1972, defendant continued to tell plaintiff that he loved her but he also was in love with another woman; that as a result, plaintiff became "very upset and nervous" and on one occasion she tried to commit suicide

Earles v. Earles

by taking an overdose of sleeping pills; that in August 1972, plaintiff and the children went to Louisiana to live with the defendant, and the family moved into two rooms at a motel which the defendant had obtained; that on the day of their arrival the plaintiff and defendant had a discussion about their marriage and the defendant stated that even if they stayed "he would continue to see the other person"; and that plaintiff then took another overdose of sleeping pills and was "sent to a mental hospital" where she stayed "for about a week." Plaintiff offered other evidence tending to show that she discovered that the defendant had moved out of the motel room when she was released from the hospital, and that she found him and asked him to return but he refused.

Defendant testified that his relationship with the plaintiff had been difficult since shortly after their marriage; that their sex life was "varied and quite infrequent" and the "marriage was kept together because of the smaller children." According to the defendant, in July 1972, he and the plaintiff agreed to settle their differences and attempt a reconciliation. Accordingly, the family came to Louisiana, where he was stationed. Shortly after her arrival, however, the plaintiff tried to commit suicide and was hospitalized. When she was released from the hospital for a day to go with the defendant to visit some friends in Long View, Texas, plaintiff mentioned the possibility of a separation. Defendant testified that he moved out of their motel room because he had been ordered to prepare for an assignment in Taiwan; that he intended to return and did not leave with the intention of abandoning the plaintiff. When the plaintiff was released from the hospital the defendant "told her that the apartment was still there if they wanted to live there" but the plaintiff insisted on returning to Ruffin. At no time did he tell her to go back to North Carolina.

The following three issues were submitted to the jury, and answered in favor of the plaintiff:

"1. Was the Plaintiff a citizen and resident of North Carolina at least 6 months immediately preceding the filing of this action?

ANSWER Yes.

2. Did the defendant, Ralph W. Earles, abandon the plaintiff, Mary Pergerson Earles, on or about August 8, 1972, as alleged in the complaint?

ANSWER Yes.

3. If so, was the plaintiff a dependent spouse and the defendant a supporting spouse, as alleged in the complaint?

ANSWER Yes."

From the entry of judgment granting plaintiff a divorce from bed and board, with the amount of permanent alimony and attorney fees postponed for later determination, defendant appealed.

Additional facts necessary for decision are set forth in the opinion.

*Gwyn, Gwyn and Morgan, by Melzer A. Morgan, Jr.,* for plaintiff appellee.

*Bethea, Robinson, Moore and Sands, by Alexander P. Sands,* for defendant appellant.

PARKER, Judge.

[1] In his first and eighth assignments of error defendant argues that "if the court sustains Assignment of Error Nos. 4 and 5, there is insufficient competent and admissible evidence to sustain the judgment in this matter." We disagree. At the trial there was evidence that the parties moved into a motel room; that the defendant subsequently moved out; that after being released from the hospital the plaintiff asked him to return; and that the defendant refused, and never has returned to the plaintiff. As there was sufficient evidence to go to the jury on the issue of abandonment, defendant's motions for a directed verdict were properly denied. These assignments of error are overruled.

[2] Defendant next asserts that it was error for the trial court to submit to the jury the issues of whether the plaintiff was the "dependent spouse" and the defendant the "supporting spouse." We find merit in this contention. In *Bennett v. Bennett,* 24 N.C. App. 680, 211 S.E. 2d 835 (1975), we held that the issues of who is a "dependent spouse" and who is a "supporting spouse" are mixed questions of law and fact which can

be best determined by the trial judge when he sets the amount of permanent alimony. Since these issues should have been decided by the trial court and not the jury, the verdict of the jury on these issues should be stricken from the record. A determination on these issues will have to be made by the trial judge.

[3] In his third assignment of error defendant contends that (1) he should have been permitted to amend his answer to allege condonation; and (2) the jury should have been instructed on the issue of condonation. We find this assignment of error without merit. At the trial there was no evidence that the plaintiff condoned the defendant's abandonment; we therefore conclude the trial court properly refused to give instructions on this issue. Furthermore, the only evidence of condonation offered by defendant tended to show that the plaintiff condoned the indignities to which defendant subjected her. Since the issue of indignities was not submitted to the jury, any error in the trial court's refusal to allow the defendant to amend his answer to allege condonation was harmless. This assignment of error is overruled.

[4] Defendant next argues that the plaintiff should not have been allowed to testify regarding defendant's statements that he loved another woman and would continue to see her. Defendant maintains that such evidence was inadmissible under G.S. 8-56, which provides in part that "[n]othing herein shall render any husband or wife, competent or compellable to give evidence for or against the other in any action or proceeding in consequence of adultery, or in any action or proceeding for divorce on account of adultery" and under G.S. 50-10 which provides in part that "[o]n such trial neither the husband nor wife shall be a competent witness to prove the adultery of the other, nor shall the admissions of either party be received as evidence to prove such fact." We disagree. The factual situation of this case clearly precludes the defendant from invoking the prohibitions contained in G.S. 8-56 since this was not an "action or proceeding in consequence of adultery," or an "action or proceeding for divorce on account of adultery." Moreover, while our Supreme Court has held that the provisions of G.S. 50-10 are not limited to actions in consequence of adultery or actions for divorce on account of adultery, but apply in *"all* divorce actions, including actions for alimony without divorce," *Hicks v. Hicks,* 275 N.C. 370, 378, 167 S.E. 2d 761, 766 (1969), here there was no accusation or attempt by the plaintiff to prove adultery. Adultery has

been defined as "voluntary sexual intercourse of a married person with one other than his or her spouse." 1 Lee, N. C. Family Law, § 65, p. 254. Plaintiff's testimony tended to show only that the defendant saw another woman and that he loved her, not that he had sexual intercourse with her. The case of *Phillips v. Phillips*, 9 N.C. App. 438, 176 S.E. 2d 379 (1970), relied on heavily by the defendant is distinguishable from the case at bar. In *Phillips* we held that a husband should not have been permitted to testify that he caught his wife in the woods with another man. This testimony clearly implied an act of sexual intercourse and tended to show adultery; it thus differs from the plaintiff's testimony in this case. We also note that even if the plaintiff's testimony should have been excluded, which we do not concede, this error was harmless because this testimony related only to the issue of indignities, which was not submitted to the jury. For the foregoing reasons, this assignment of error is overruled.

[5] At the trial, counsel for the plaintiff cross-examined the defendant concerning certain personal letters he wrote to the plaintiff in 1971 and 1972. In his fifth assignment of error defendant contends that these letters were privileged confidential communications between husband and wife. He also maintains that his oral statements to the plaintiff that he loved another woman and would continue to see her were privileged. These contentions are without merit. We note that the defendant objected only to certain portions of the letters, while allowing other similar portions to be admitted without objection. At no time did counsel for the defendant make a specific objection to the admission of this evidence. Furthermore, it seems clear that the oral statements made by the defendant to the plaintiff were not intended to be confidential. The record shows that the defendant made similar statements to several other persons. Finally, as we have already pointed out, the admission of defendant's letters and oral statements to the plaintiff could not have been prejudicial, even if erroneous, since this evidence related to the issue of indignities, which was not submitted to the jury.

In his sixth and seventh assignments of error defendant argues that in its instructions to the jury the trial court failed to give a clear statement of the facts and failed adequately to explain the law applicable to the facts. We have examined the charge as a whole, and conclude the trial court adequately stated the facts and the applicable law.

.The judgment entered must be modified by deleting there-from the third issue and the answer thereto. This issue must be left for determination by the court. In all other respects the judgment is affirmed.

Modified and affirmed.

Chief Judge BROCK and Judge HEDRICK concur.