STROUD, Judge.
 

 *105
 
 Defendant appeals from a permanent alimony order. Because defendant has failed to provide a complete record for review on appeal, we affirm the trial court's order on the issues which this Court cannot review without the missing transcript. As to defendant's remaining issue regarding marital fault, we affirm.
 

 I. Background
 

 On 28 June 2016, plaintiff-wife filed a complaint against defendant-husband alleging that the parties married in 2006, had one child, and separated in June of 2016. Wife sought child custody, child support, postseparation support, alimony, equitable distribution, and an injunction to protect certain assets. Husband answered Wife's complaint alleging several affirmative defenses and also counterclaiming for child custody, child support, and equitable distribution ("ED").
 

 *773
 
 On 27 March 2017, the trial court entered an order addressing child custody, child support, postseparation support, and uninsured medical expenses; this order is not at issue on appeal. On 6 December 2017, the trial court entered an alimony order which requires Husband to pay Wife $1,100 a month for 48 months. Husband appeals the alimony order.
 

 II. Record on Appeal
 

 Husband first contends "the trial court committed reversible error when it concluded as a matter of law that [Wife] was entitled to alimony and ordered that [Husband] pay [Wife] alimony[.]" (Original in all caps.) Husband raises four sub-arguments based upon findings of fact and conclusions of law regarding Wife's status as dependent spouse, judicial notice of financial affidavits, and sufficiency of the evidence
 
 *106
 
 regarding the parties' accustomed standard of living during the marriage. Husband also challenges numerous findings of fact as unsupported by the evidence.
 

 Since Husband's arguments are based upon the sufficiency of the evidence to support the trial court's findings regarding various financial aspects of the case, we must determine whether there was sufficient financial evidence to support the findings.
 

 Decisions regarding the amount of alimony are left to the sound discretion of the trial judge and will not be disturbed on appeal unless there has been a manifest abuse of that discretion. When the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts.
 

 An abuse of discretion has occurred if the decision is manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision.
 

 Kelly v. Kelly
 
 ,
 
 228 N.C. App. 600
 
 , 601,
 
 747 S.E.2d 268
 
 , 272-73 (2013) (citations and quotation marks omitted).
 

 But our record on appeal includes only a portion of the trial transcript, so we cannot review any issues of sufficiency of the evidence. Husband has waived these issues on appeal by providing only a portion of the transcript and leaving out portions relevant to his appeal. It is clear from the transcript that the claims for ED and alimony were heard on the same day. The trial started with the ED claim and then the trial court heard the alimony portion of the case.
 

 Our transcript on appeal begins with page 1-but in middle of the hearing-as the court reporter apparently transcribed only part of the hearing. The transcript begins with Wife's attorney explaining, "I have a witness here under subpoena, and
 
 he's had to sleep through the E.D
 
 . so if I can go ahead and call him and try to get him out of here." (Emphasis added.) The witness gave brief testimony and was released. Later, during the testimony and arguments, there were references to the ED portion of the hearing that had just transpired. For example, Wife's testimony includes the following questions and answers:
 

 Q. You testified
 
 during the ED portion of this
 
 that you have three children; is that correct?
 

 *107
 
 A. Yes.
 

 ....
 

 Q. Did you hear those
 
 numbers I read to Mr. Gilmartin earlier
 
 about net profits for the business off of the tax returns?
 

 A. Yes.
 

 ....
 

 Q. And
 
 I know we went through this in ED
 
 , but I'm going to ask you again, did you invest some or all of the retirement monies that you took out into Bottomline?
 

 A. Yes.
 

 (Emphasis added.) At the end of the hearing,
 
 Husband's
 
 attorney began his closing argument, "May it please The Court and Mr. Sanders. Your Honor,
 
 addressing equitable distribution first
 
 ." (Emphasis added.) Thus, it is clear that the trial court heard the claims of ED and alimony at the same hearing, but Husband provided only the second portion of the transcript. And most of Husband's challenges to the findings of fact as unsupported are based upon the lack of financial evidence that would quite logically have been included in the ED portion of the
 
 *774
 
 trial, which may be why it was not repeated in the alimony portion of the trial.
 

 Husband, citing to pages 1-108 of the transcript, the entire transcript but for the closing arguments, argues, "No financial affidavit was introduced for [Wife] at trial and, in fact, no exhibits were introduced at the alimony hearing." But pages 1-108 are
 
 only
 
 the alimony portion of the hearing, so we have no way of knowing what exhibits were introduced or what discussion, if any, occurred about the financial affidavit during the equitable distribution phase. Husband may not have intended to misrepresent the record before the trial court to this Court, but because a substantial portion of the transcript particularly relevant to his argument on appeal is missing, we cannot review the sufficiency of the evidence.
 

 It is the duty of the appellant to ensure this Court has everything needed for a proper review of his issues on appeal.
 
 See
 

 State v. Davis
 
 ,
 
 191 N.C. App. 535
 
 , 539,
 
 664 S.E.2d 21
 
 , 24 (2008) ("We note that State's exhibit 18, the videotaped interview of K.T., was not included as an exhibit to the record on appeal and was not recorded on the trial transcript. It is the duty of the appellant to ensure that all documents and exhibits necessary for an appellate court to consider his assignments of error are
 
 *108
 
 part of the record or exhibits."). Further, "[a]n appellate court is not required to, and should not, assume error by the trial judge when none appears on the record before the appellate court."
 
 State v. Williams
 
 ,
 
 274 N.C. 328
 
 , 333,
 
 163 S.E.2d 353
 
 , 357 (1968). Accordingly, we affirm the trial court's order as to these issues on appeal.
 
 See
 

 King v. King
 
 ,
 
 146 N.C. App. 442
 
 , 445-46,
 
 552 S.E.2d 262
 
 , 265 (2001) ("Plaintiffs also argue the trial court erred in entering findings of facts and conclusions of law concerning damages to Plaintiffs' property that were not supported by the evidence.
 
 Because Plaintiffs have failed to include a transcript of evidence from the hearing in this matter or any evidence which would enable this Court to determine whether the trial court's findings of fact are supported by competent evidence, we overrule this assignment of error.
 
 Accordingly, the trial court's findings of fact and conclusions of law concerning damages to Plaintiffs' property are affirmed." (emphasis added) (citation and quotation marks omitted) ).
 

 III. Alimony Factors
 

 Husband next challenges the amount and duration of the alimony award. Husband contends that
 

 the trial court committed reversible error when it ordered defendant to pay plaintiff alimony in the sum of $1,100.00 per month for forty-eight months when the court did not have sufficient competent evidence to order alimony in any amount and the court failed to provide a factual basis for the duration of alimony?
 

 (Original in all caps.) Again, due to the incomplete transcript, we cannot review the sufficiency of the evidence. The order on appeal has findings of fact on some of the alimony factors enumerated in North Carolina General Statute § 50-16.3A(b), and we must assume they are supported by the evidence. And since findings for a particular factor are only required if evidence was presented on that factor, we must also assume the trial court made findings addressing all of the factors for which evidence was presented.
 
 See generally
 

 N.C. Gen. Stat. § 50-16
 
 .3A(b-c) (2017) (noting as to the 16 factors the trial "court shall make a specific finding of fact on each of the" "relevant factors" in subsection (b) only "if evidence is offered on that factor"). The trial court made findings of fact regarding many of the factors, including "marital misconduct[,]" "relative earnings[,]" "ages" of the parties, "amount and sources" of income, "duration of the marriage[,]" and "standard of living of the spouses established during the marriage[.]" The trial court also concluded, "The award of alimony is equitable
 
 considering all relevant factors
 
 , including those set forth in NCGS Section 50-16.3A(b)" and "[t]he relevant factors
 
 *109
 
 support alimony in the amount designated and for the designated duration." (Emphasis added.) Again, "[a]n appellate court is not required to, and should not, assume error by the trial judge when none appears on the record before the appellate court."
 
 Williams
 
 ,
 
 274 N.C. at 333
 
 ,
 
 163 S.E.2d at 357
 
 . And again, we affirm.
 
 See
 

 King
 
 ,
 
 146 N.C. App. at 445-46
 
 ,
 
 552 S.E.2d at 265
 
 .
 
 *775
 
 IV. Martial Fault
 

 Husband also contends, "the trial court committed reversible error when it found that [Husband] committed marital fault even though [Wife] failed to allege a lack of provocation, [Wife] condoned defendant's behavior and plaintiff, in her complaint, failed to allege the nature of the 'indignities' she suffered during the marriage." (Original in all caps.) Because marital fault concerns only alimony and is not dependent upon the financial circumstances of the parties, and we have that portion of the transcript, we are able to review these issues on appeal.
 

 Decisions regarding the amount of alimony are left to the sound discretion of the trial judge and will not be disturbed on appeal unless there has been a manifest abuse of that discretion. When the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. An abuse of discretion has occurred if the decision is manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision.
 

 One of the factors that a trial court must take into account in awarding alimony, when relevant, is marital misconduct.
 
 N.C. Gen. Stat. § 50-16
 
 .3A(b)(1) (2011). Marital misconduct includes indignities rendering the condition of the other spouse intolerable and life burdensome during the marriage and on or before the date of separation.
 

 Our courts have declined to specifically define indignities, preferring instead to examine the facts on a case by case basis. Indignities consist of a course of conduct or repeated treatment over a period of time including behavior such as unmerited reproach, studied neglect, abusive language, and other manifestations of settled hate and estrangement.
 

 *110
 

 Dechkovskaia v. Dechkovskaia
 
 ,
 
 232 N.C. App. 350
 
 , 356,
 
 754 S.E.2d 831
 
 , 836 (2014) (citations, quotation marks, brackets, and footnote omitted).
 

 A. Sufficiency of Allegations in Complaint
 

 Citing
 
 Dechkovskaia,
 
 Husband argues Wife "must allege a lack of provocation as to the cause of [Husband's] alleged marital conduct[.]" (Original in all caps). In other words, Husband contends that Wife must specifically allege that she did
 
 not
 
 do anything to provoke Husband to use pornography and solicit women online, presumably every time he did this over the years, despite the fact that he hid his actions from her. Husband also contends Wife failed to properly allege in her complaint "the nature of the 'indignities' she suffered[.]" (Original in all caps.)
 

 Wife's claim was based upon North Carolina General Statute § 50-16.3A, and she alleged Husband had engaged in "marital misconduct," specifically "[i]llict sexual behavior" and "[i]ndignities" as enumerated in North Carolina General Statute § 50-16.1A(3).
 
 See
 

 N.C. Gen. Stat. § 50-16
 
 .1A(3) (2015). Wife also included specific factual allegations about the nature of the indignities: "including but not limited to the repeated and addictive use of pornography and the use of social media sites for dating and flirting with other women." Although Husband did not file a Rule 12(b)(6) motion to dismiss the alimony claim, and his brief does not rely upon Rule 12(b)(6), his argument is that Wife's claim for alimony based upon indignities should be dismissed for failure to state a claim because
 
 her complaint failed
 
 to allege provocation and identify the indignities with enough detail.
 
 See generally
 
 N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2015) (noting a party may make a motion to dismiss a claim for "[f]ailure to state a claim upon which relief can be granted"). Thus, as it is the substance of defendant's argument, we treat his objection as a Rule 12(b)(6) motion to dismiss for failure to state a claim.
 

 In
 
 Shingledecker v. Shingledecker
 
 the defendant-husband made a motion to dismiss the plaintiff-wife's claim for divorce from bed and board based upon "constructive abandonment, cruel and barbarous treatment and indignities" for failure to state a claim for relief because she had "failed to allege that the actions were perpetrated without adequate provocation."
 

 *776
 

 103 N.C. App. 783
 
 , 784-86,
 
 407 S.E.2d 589
 
 , 590-91 (1991). This Court noted the ancient cases supporting the defendant-husband's argument regarding provocation, but held that his motion to dismiss was not properly presented on appeal:
 

 To be sure, defendant's contention was supported by cases decided prior to the enactment of the North Carolina Rules of Civil Procedure at G.S. § 1A-1.
 
 See, e.g.,
 

 *111
 

 Brooks v. Brooks
 
 ,
 
 226 N.C. 280
 
 , 284,
 
 37 S.E.2d 909
 
 , 912 (1946) (stating that the failure of a complaint seeking a divorce from bed and board on the grounds of abandonment to allege "lack of adequate provocation" is a fatal defect);
 
 Ollis v. Ollis
 
 ,
 
 241 N.C. 709
 
 , 711,
 
 86 S.E.2d 420
 
 , 421 (1955) (In alleging cruel and barbarous treatment, it is not enough for the wife to allege the husband has been abusive and violent towards her, that she has been made to fear for her safety. She must go further and allege specific acts and conduct on the part of the husband. She must also set forth what, if anything, she did to start or feed the fire of discord. The omission of such allegations] is fatal.
 

 Id.
 

 );
 
 Cushing v. Cushing
 
 ,
 
 263 N.C. 181
 
 ,
 
 139 S.E.2d 217
 
 (1964) (One who bases a claim for alimony without divorce on the ground of indignities is required "not only to set out with particularity those acts which constituted such indignities but also to show that those acts were without adequate provocation."
 
 Id.
 
 at 187,
 
 139 S.E.2d at 222
 
 . An omission to make the necessary allegations is fatal.
 
 McDowell v. McDowell
 
 ,
 
 243 N.C. 286
 
 , 288,
 
 90 S.E.2d 544
 
 , 545 (1955) ).
 

 Following the enactment of the Rules of Civil Procedure in 1967, this court in
 
 Concrete Service Corp. v. Investors Group, Inc.
 
 ,
 
 79 N.C. App. 678
 
 ,
 
 340 S.E.2d 755
 
 ,
 
 cert. denied
 
 ,
 
 317 N.C. 333
 
 ,
 
 346 S.E.2d 137
 
 (1986), specifically addressed the propriety of appealing motions of this type. There, we fashioned the following rule of procedural law:
 

 Where an unsuccessful motion to dismiss is grounded on an alleged insufficiency of the facts to state a claim for relief, and the case thereupon proceeds to judgment on the merits, the unsuccessful movant may not on an appeal from the final judgment seek review of the denial of the motion to dismiss.
 

 Id.
 

 at N.C. App. at 682-83,
 
 340 S.E.2d at 758-759
 
 .
 

 Inasmuch as we find
 
 Concrete Service Corp.
 
 to be controlling on this issue, we conclude that defendant's motion to dismiss is not properly presented by this appeal.
 

 Id.
 

 at 786-87
 
 ,
 
 407 S.E.2d at 591
 
 (quotation marks, ellipses, and brackets omitted). Although
 
 Shingledecker
 
 addressed a claim for divorce from bed and board instead of alimony, the law regarding lack of provocation is the same, and Husband's argument that Wife's claim should be dismissed is the same.
 
 See
 

 id.
 
 at 784-87,
 
 407 S.E.2d at 590-91
 
 . In accord with
 
 *112
 

 Shingledecker
 
 , Husband's motion to dismiss "is not properly presented by this appeal."
 
 Id.
 
 at 787,
 
 407 S.E.2d at 591
 
 . This argument is overruled.
 

 B. Condonation
 

 Husband next contends "the trial court erred when it did not find that [Wife] condoned the [Husband's] illicit sexual behavior." (Original in all caps.) Whether marital misconduct has been condoned is a question of fact.
 
 See generally
 

 Gordon v. Gordon
 
 ,
 
 88 N.C. 45
 
 , 50 (1883) ("For even if these facts are not of themselves sufficient, they are of such a character as to revive the transactions occurring before the separation, and obliterate the condonation arising from the return of the petitioner to the house of the defendant."). Again,
 

 Decisions regarding the amount of alimony are left to the sound discretion of the trial judge and will not be disturbed on appeal unless there has been a manifest abuse of that discretion. When the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts.
 

 An abuse of discretion has occurred if the decision is manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision.
 

 *777
 

 Kelly
 
 ,
 
 228 N.C. App. at 601
 
 ,
 
 747 S.E.2d at 272-73
 
 (2013) (citations and quotation marks omitted).
 

 The North Carolina Pattern Jury Instructions succinctly and accurately summarize the law regarding condonation:
 

 In order to condone or forgive marital misconduct, a spouse must know that such marital misconduct occurred. This means that before marital misconduct can be forgiven, the spouse must have actual knowledge of the marital misconduct or have knowledge of facts which would satisfy a reasonably prudent person that the marital misconduct had been committed. Mere suspicion without facts or knowledge to support such suspicion will not suffice. In addition, it must appear that a spouse not only knew of the marital misconduct, but also accepted it as true.
 

 A spouse condones or forgives marital misconduct when he voluntarily elects to [continue] [resume] the
 
 *113
 
 marital relationship with the spouse who has committed marital misconduct. [Continuation] [Resumption] of the marital relationship means voluntary [continuation] [renewal] of the husband and wife relationship, as shown by the totality of the circumstances.
 

 [Evidence that the plaintiff and defendant engaged in sexual intercourse after the [plaintiff] [defendant] forgave his spouse for act(s) of marital misconduct is not required.]
 

 [Evidence of voluntary sexual intercourse between the plaintiff and the defendant after the [plaintiff] [defendant] has actual knowledge of the adultery of his spouse, or has knowledge of facts which would satisfy a reasonably prudent person that his spouse had committed adultery, is considered evidence of a spouse's forgiveness of adultery on the part of the offending spouse, and should be considered with all the other facts and circumstances in evidence].
 

 Forgiveness may be express or implied. Express forgiveness is when a [husband] [wife] states to his spouse who has committed marital misconduct, "I forgive you for (state alleged marital misconduct)" or similar words to that effect.
 

 Forgiveness is implied when a husband and wife [continue] [resume] the marital relationship after a spouse has knowledge of marital misconduct by his spouse. [However, forgiveness is not implied simply because spouses live in the same residence.] [Isolated incidents of sexual intercourse between the parties do not constitute resumption of marital relations.]
 

 N.C.P.I.-Civil 815.71 (footnotes omitted).
 

 The trial court's findings relevant to marital fault and condonation, or the lack thereof, were as follows:
 

 23. Throughout the course of the parties' marriage the defendant was addicted to pornography. The plaintiff discovered this issue early in the marriage and she told the defendant it bothered her. The defendant exchanged pornographic photos with others, including a nude picture of the plaintiff which was sent to a co-worker at the Coast Guard base without the plaintiff's knowledge or consent,
 
 *114
 
 and solicited sexual encounters with others on the internet. He also left a digital trail of pornographic websites on computers and tablets accessible to the children.
 

 24. The defendant visited and used social media sites for flirting and dating and setting up encounters with other women. Throughout the marriage the defendant repeatedly sought out online sexual encounters with other women and saw other women for sexual reasons. He admits having two affairs during the course of the marriage, one of which was with an exotic dancer and other with the teacher of one of the plaintiff's children.
 

 25. The plaintiff confronted the defendant about his use of pornography and online sexual solicitations during the marriage, to no avail. The defendant's conduct continued. When confronted, the defendant would at first deny his conduct, then become angry and defensive and accuse the plaintiff of being nosey. He would then become contrite and say he was sorry. At one point the defendant agreed to go to counseling for his addiction to pornography but he stopped attending after a short time. At times the plaintiff believed the defendant had changed his ways but he
 
 *778
 
 never did and this pattern repeated itself throughout the marriage.
 

 26. The defendant's conduct, including his addiction to pornography, his affairs and his constant solicitations of other women had a devastating effect upon the plaintiff. At one point she thought she was going to have a nervous breakdown and she began to see a therapist, which she continues to do through the present. The plaintiff felt guilty about what was happening in her marriage and. the defendant's actions devastated her self-esteem.
 

 27. Just prior to the parties' separation their relationship appeared to the plaintiff to be on an upswing and they had sexual relations about a month prior to the separation. However, at this time the defendant was deceiving the plaintiff.
 

 28. On the date of separation, the parties argued over whether the defendant would attend a middle school graduation for one of the children. This led to a larger argument. Then, with no other forewarning, the defendant
 
 *115
 
 told the plaintiff that he hated her and that their marriage was over.
 

 Husband does not contest the findings of fact, but rather argues that the trial court erred in also failing to make "a finding of condonation on the part of" Wife. Husband contends that because Wife was aware of his illicit sexual behavior-the two affairs in 2008-but the parties remained together and had intercourse after 2008, including approximately a month before separation, the trial court erred when it failed to make a finding of condonation of his illicit sexual behavior.
 
 See generally
 

 N.C. Gen. Stat. § 50-16
 
 .1A(3)(a) (defining "[i]llicit sexual behavior" as "acts of sexual or deviate sexual intercourse, deviate sexual acts, or sexual acts defined in G.S. 14-27.20(4), voluntarily engaged in by a spouse with someone other than the other spouse"). But Husband fails to note almost all of the findings of fact regarding fault address indignities, not illicit sexual behavior. The order mentions the 2008 affairs specifically only once, in the last sentence of finding 24. The findings focus mostly on Husband's addiction to pornography and communications with women online, noting that these were problems "throughout the marriage." Even if we assume the trial court tacitly found Wife had condoned Husband's illicit sexual behavior in 2008, the marital fault of indignities remains.
 

 Husband's argument fails to recognize that he had the burden of proof of condonation for
 
 both
 
 illicit sexual behavior
 
 and
 
 indignities, and these are separate and independent grounds for marital fault.
 
 [1]
 

 See
 

 N.C. Gen. Stat. § 50-16
 
 .1A(3). Even if the affairs in 2008 were condoned as Husband contends, he did not show condonation of indignities.
 

 In
 
 Earles v. Earles
 
 , the plaintiff-wife had alleged both abandonment and indignities as marital faults.
 
 26 N.C. App. 559
 
 , 562-63,
 
 216 S.E.2d 739
 
 , 742 (1975). The defendant-husband argued that the trial court erred by not instructing the jury on the issue of condonation of abandonment, and this Court determined that the trial court did not need to instruct on condonation of abandonment because the defendant did not present any evidence of condonation of this marital fault; all of his evidence of condonation related to the indignities.
 
 Id.
 
 at 563,
 
 216 S.E.2d at 743
 
 . Here, the trial court's findings of fault are based upon the indignities, and Husband has not directed us to any evidence of condonation of his addictive use
 
 *116
 
 of pornography and seeking other women on social media websites. Instead, the evidence and findings show just the opposite: Husband was deceiving Wife regarding his continuing use of pornography and online sexual solicitations. Whenever Wife discovered what Husband was doing and objected, he would first deny and then acknowledge his actions and promise to stop. The fact that Husband and Wife continued to live together and even have sexual relations would not condone these indignities,
 
 *779
 
 since Wife would have had to have full knowledge of Husband's continuing pornography use and online solicitations to condone these actions, and a spouse can conduct marital fault
 

 only with knowledge of what there is to forgive. Suspicion that the other spouse has committed a matrimonial offense like adultery will not make continued cohabitation amount to condonation. The accused must demonstrate that the complaining spouse had actual knowledge of the marital offense or had facts which would satisfy a reasonably prudent person that the offense had been committed. In addition, it must appear that the complaining spouse not only knew of the marital misconduct, but also accepted it as true. Moreover where the accused spouse is guilty of several acts of marital misconduct and the complaining spouse knows of only one of them, the complaining spouse has condoned only the known misconduct. A spouse might forgive certain acts of adultery with certain people, for example, but not forgive others.
 

 N.C.P.I.-Civil 815.71 n.9 (quotation marks, ellipses, and brackets, and parenthesis omitted) (citing 6
 
 Lee's
 
 § 6.19(B) ).
 

 Husband argues that trial court's finding that he "was deceiving" Wife "does not make sense" because he had admitted his illicit sexual behavior in 2008 to Wife and several years passed before they separated. But the deception the trial court found related to the indignities, not the illicit sexual behavior. Even if Wife condoned the 2008 affairs, Wife could not have condoned Husband's continuing "use of pornography and online sexual solicitations" because Husband "deceiv[ed]" her into believing he had ceased the behavior. Husband does not contend that Wife had full knowledge at all times of his continuing pornography use and online solicitations nor that she ever acquiesced to his actions. Wife testified about finding pornography on their home computer, iPad, and cell phone, where their children could be exposed to it, and the oldest child did see it. Wife also testified about finding that Husband was
 
 *117
 
 "[r]egistering on dating sites. Searching for sex on Craig's List. Other women exchanging photos." Wife was upset about these findings and felt "[h]orrible." When Wife confronted Husband about the pornography and on-line solicitations,
 

 [h]e would admit to it after I would find it out, but then he would be angry because I was playing detective according to him, trying to find him doing things that were wrong. And we would have a disagreement and then it would come down to, you know, he was sorry and he wasn't going to do it again. But then it came down to he couldn't not do it again. So it became-it was a problem.
 

 Q. So you would confront him and his first reaction would be to become angry?
 

 A. No, he would just deny it. He would just deny it.
 

 The evidence and findings indicate that Husband denied the indignities, and when Wife confronted him with proof, he would admit what he had done and agree to counseling, but then he stopped the counseling and continued the misconduct, and "[a]t times the plaintiff believed the defendant had changed his ways but he never did and this pattern repeated itself throughout the marriage." The trial court further found that Husband "lied to and deceived" Wife "throughout the marriage[.]" The evidence supports the trial court's findings of fact regarding indignities, and the trial court did not make any findings regarding condonation of the indignities because Husband did not present any evidence that Wife ever had sufficient knowledge of his actions to condone them. When Wife did become aware of Husband's actions, she objected and asked him to stop, but he continued his behavior surreptitiously. This argument is overruled.
 

 V. Conclusion
 

 For the foregoing reasons, we affirm.
 

 AFFIRMED.
 

 Judge DILLON concurs.
 

 Judge BERGER concurs in the result only.
 

 [1]
 

 The North Carolina Pattern Jury Instructions point out that each type of marital misconduct for which evidence is presented must be addressed separately.
 
 See
 
 N.C.P.I.-Civil 815.71 n.5. The instruction on condonation notes that "[t]o avoid confusion in the event it is contended that more than one type of marital misconduct has been condoned, it may be necessary to specify with particularity the types of marital misconduct involved and to submit a separate sub-issue as to each."
 

 Id.