**KELLY v. KELLY**

[228 N.C. App. 600 (2013)]

REBECCA STEPHENS KELLY, Plaintiff
v.
REGINALD BROWN KELLY, Defendant

No. COA12-1582

Filed 6 August 2013

**Divorce—alimony—modification—no substantial change of circumstances**

The trial court did not err by denying defendant's motion to modify alimony. The trial court's findings of fact were supported by the evidence and the findings supported the conclusion that there had been no substantial change of circumstances since the initial alimony order was entered.

Appeal by defendant from Order entered on or about 31 July 2012 by Judge William G. Stewart in District Court, Johnston County. Heard in the Court of Appeals 6 June 2013.

*The Rosen Law Firm by Lisa M. Angel, for plaintiff-appellee.*

*Doster, Post, Silverman & Foushee, P.A., by Jonathan Silverman, for defendant-appellant.*

STROUD, Judge.

Reginald Brown Kelly ("defendant") appeals from an order denying his motion to modify alimony. Defendant argues on appeal that several of the trial court's findings are not supported by the evidence and that the findings are insufficient to support the trial court's conclusion that there has been no substantial change of circumstances since the initial alimony order was entered. We affirm.

I. Background

On 9 December 2004, the trial court entered a consent order ("Alimony order") awarding defendant's ex-wife, Ms. Kelly ("plaintiff"), $12,000 per month in alimony. On 30 September 2011, defendant moved to modify his alimony obligation on the grounds that his ability to pay and his ex-wife's financial needs had substantially changed since entry of the alimony order. The trial court found no substantial change in circumstances and denied his motion. Defendant timely filed written notice of appeal.

## II. Standard of Review

Decisions regarding the amount of alimony are left to the sound discretion of the trial judge and will not be disturbed on appeal unless there has been a manifest abuse of that discretion. When the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts.

*Williamson v. Williamson*, ___ N.C. App. ___, ___, 719 S.E.2d 625, 626 (2011) (citations and quotation marks omitted). An abuse of discretion has occurred if the decision is "manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision." *Briley v. Farabow*, 348 N.C. 537, 547, 501 S.E.2d 649, 656 (1998) (citations omitted).

### III. Sufficiency of the evidence to support the findings

Defendant challenges findings of fact 10, 11, and 18 as unsupported by the evidence.[1] We disagree.

The findings challenged by defendant are:

10.    That Defendant's employment is the same [as] at the time of the Alimony Order, namely that he is still working full time with Kelly and West, PA and although the gross revenues [have] changed over time, those fluctuations in revenue occurred historically and were known to Defendant at the time he entered into the Alimony Order.

11[a]. That any decrease in Defendant's income has only been in the past two years and it has not kept him from his ability to maintain a reasonable standard of living.

11[b]. That Defendant has increased his living expenses and debts since the Alimony Order but the Court finds those to be voluntary decisions by Defendant to live beyond his income, specifically, Defendant purchased a new home since the separation, refinanced the mortgages on his residence, added a huge garage to his residence in

---

1. Defendant also purports to challenge finding of fact 8, concerning the lack of a decrease in plaintiff's expenses, though he admits that finding is supported by the evidence. His argument instead focuses on whether the trial court properly considered the required factors, an argument addressed below.

2007, and used an equity line to finance dock repair at his beach house.

. . .

18.     That Defendant's income has not decreased sub-stantially since the Alimony Order.[2]

Each of these findings is supported by the evidence.

Findings No. 10 and 18 are probably the most important findings, as many of defendant's arguments are based upon the claim that his income has substantially decreased; his other arguments as to the general state of the economy, changes in the economics and competitiveness of law practices, and his worsened health are all simply reasons for the decline in income. If his income has not actually decreased substantially, these potential causes for a decrease in income become irrelevant. The 2004 alimony order recognizes that defendant's income has normally fluctu-ated. Thus, as to these pivotal findings, we note that

> a court should proceed with caution in determining whether to modify a decree for alimony on the ground of a change in the financial circumstances of the parties.
>
> Where the change in the circumstances is one that the trial court expected and probably made allowances for when entering the original decree, the change is not a ground for a modification of the decree. In accord with the view it is said that minor fluctuations in income are a com-mon occurrence and the likelihood that they would occur must have been considered by the court when it entered a decree for alimony.  ·
>
> The fact that the husband's salary or income has been reduced substantially does not automatically entitle him to a reduction in alimony or maintenance. If the husband is able to make the payments as originally ordered not-withstanding the reduction in his income, and the other facts of the case make it proper to continue the payments, the court may refuse to modify the decree.

*Britt v. Britt,* 49 N.C. App. 463, 472, 271 S.E.2d 921, 927 (1980) (citations and quotation marks omitted).

---

2. The trial court labeled two findings as 11, so we will refer to these findings as "11a" and "11b."

The 2004 alimony order, based on the parties' mediated settlement agreement, contained detailed findings regarding defendant's employment as an attorney at the law firm he co-owned as well as his adjusted gross income for the years of 1998 to 2003 both from his law firm as well as from Lillington Rentals:

1998 – $304,375

1999 – $561,383

2000 – $247,290

2001 – $551,240

2002 – $382,270

2003 – $231,816

At the modification hearing; the evidence showed that defendant is still employed at the same firm, which still has the same number of attorneys, a "similar number" of non-lawyer emplyees, and the same areas of practice, with the addition of worker's compensation. He also still receives income from Lillington Rentals, a separate business entity owned by defendant and his law partner which owns the furniture and office equipment in the law office and receives rental income from the law firm. According to defendant's income tax returns, his net income (his adjusted gross income plus the yearly $144,000 in tax-deductible alimony) for the years of 2004 to 2011 was as follows:

2004 - $1,697,417

2005 - $659,867

2006 – $577,650

2007 - $797,889

2008 - $311,788[3]

2009 - $456,393

---

3. There is a discrepancy between the parties' 2008 tax returns as to the alimony paid. Plaintiff claimed that she received $144,000 in alimony, the normal amount, but defendant claimed to have paid $156,000. The trial court made no findings regarding how much defendant had paid in 2008. Thus we have based the 2008 income upon only the $144,000 per year required by the consent alimony order, but it would make no difference to our ruling if defendant actually did pay $156,000, and defendant has not raised any issue of overpayment on appeal.

2010 - $216,205

2011 - $224,769

·   The pattern of earnings for these years is quite similar to years prior to the alimony order, and the income is reduced only in the two most recent years. Overall, defendant's average annual income over the six years prior to the alimony order was $379,729, while defendant's average annual income based upon the years since entry of the order was $617,747. Even excluding the income for 2004, which was unusually high due to one case, defendant's average annual income since 2005 was $463,509, or $83,780 *more* than his average income during the time period prior to alimony order based upon the amounts as stated in the order.

As noted by *Britt*, income variations as shown by defendant are "a common occurrence" and the fact that they would occur was more than a "likelihood," as the alimony order shows that the income variations were "considered by the court when it entered a decree for alimony." *Britt*, 49 N.C. App. at 472, 271 S.E.2d at 927. The trial court's determination that defendant's income has not substantially decreased is supported by the evidence, despite the fact that his income for the two most recent years is lower, and is not an abuse of discretion.

Findings 11a and 11b are also supported by the evidence. The evidence showed that defendant has not only continued meeting his financial obligations but also is making substantial discretionary purchases and investments. Despite any changes in income, defendant has continued making monthly alimony payments in the full amount and generally on time. In the years since 2004, defendant and his current wife have gone on several vacations to Aruba, Hilton Head, and Charleston. In 2007, defendant spent $150,000 to build a three-car garage and purchased a boat for $34,000. He spent roughly $50,000 to repair the dock at his beach home in 2011 and was able to make the maximum contribution to his 401K over several years. He was also able to pay off his unsecured debt that existed at the time of the prior consent order with proceeds from a "land deal." Thus, even if defendant's expenses have increased, as the trial court found, the evidence also shows that these increases were voluntary. Each of the challenged findings is supported by the evidence.

IV. Failure to make more detailed findings of fact

Although defendant frames his next arguments as a challenge to the trial court's conclusion of law that defendant failed to demonstrate a substantial change of circumstances since the 2004 alimony order, his

arguments actually continue his contentions regarding the adequacy of the trial court's findings of fact. First, defendant argues that the trial court erred because it "fail[ed] to consider [or find sufficient facts regarding] the substantial decreases in [his] income, . . . the changed nature of his law practice, [and] the decreased income of this practice resulting from the recession . . . ." (original in all caps). As to these facts, defendant does not claim that there was not sufficient evidence to support the trial court's findings, but that the trial court "failed to consider" certain evidence which he contends must be addressed in the findings of fact.

To a large extent, defendant argues that the trial court's findings were not based upon his evidence or his interpretation of the evidence, and in this regard, his arguments fail, as this Court cannot substitute its judgment for that of the trial court in weighing the evidence. "When the trial judge is authorized to find the facts, his findings, if supported by competent evidence, will not be disturbed on appeal despite the existence of evidence which would sustain contrary findings." *Beall v. Beall*, 290 N.C. 669, 673, 228 S.E.2d 407, 409 (1976) (citations omitted).

Yet defendant also correctly notes that the trial court's findings must address all of the factors relevant to determination of the amount of alimony.

> As a general rule, the changed circumstances necessary for modification of an alimony order must relate to the financial needs of the dependent spouse or the supporting spouse's ability to pay. . . . To determine whether a change of circumstances under G.S. 50-16.9 has occurred, it is necessary to refer to the circumstances or factors used in the original determination of the amount of alimony awarded under G.S. 50-16.5. That statute requires consideration of the estates, earnings, earning capacity, condition, accustomed standard of living of the parties and other facts of the particular case in setting the amount of alimony.

*Rowe v. Rowe*, 305 N.C. 177, 187, 287 S.E.2d 840, 846 (1982).

In this instance, as defendant is seeking to modify the 2004 alimony order, the order must address any factors relevant to changes in circumstances since 2004 which are raised by the evidence. "The same factors used in making the initial alimony award should be used by the trial court when hearing a motion for modification. The overriding principle in cases determining the correctness of alimony is fairness to all parties." *Pierce v. Pierce*, 188 N.C. App. 488, 489-90, 655 S.E.2d 863, 864 (2008) (citations, quotations marks, and brackets omitted).

Although N.C. Gen. Stat. § 50-16.3A(b) sets forth 16 factors to be considered in the establishment of alimony, there is no need for the trial court to address each of these upon a motion for modification; the trial court needs to address only those that are relevant to the motion to modify. Defendant's motion to modify alleges three reasons for modification: (1) a reduction in income based upon the "recession" in the United States economy and increased competition from other law firms; (2) defendant's increase in age from 53 to 61, as a "contributing factor" in diminishing his earning capacity; and (3) the fact that plaintiff's need for alimony should be reduced unless she has been "financially imprudent and reckless" in her use of assets received based upon the parties' 2004 equitable distribution judgment, which was entered on the same date as the alimony order. Thus, the relevant statutory factors raised by defendant's motion to modify[4] in this case are:

> (2)   The relative earnings and earning capacities of the spouses;
>
> (3)   The ages and the physical, mental, and emotional conditions of the spouses;
>
> (4)   The amount and sources of earned and unearned income of both spouses, including, but not limited to, earnings, dividends, and benefits such as medical, retirement, insurance, social security, or others;
>
> . . . .
>
> (10) The relative assets and liabilities of the spouses and the relative debt service requirements of the spouses, including legal obligations of support;
>
> . . . .
>
> (15) Any other factor relating to the economic circumstances of the parties that the court finds to be just and proper.

N.C. Gen. Stat. § 50-16.3A (b) (2011).

In addressing these factors, the trial court need not recite all of the evidentiary facts but must find

---

4. We do not mean to imply that defendant's motion actually cited any particular statutory provisions, but the factual allegations of the motion seem to fit under these provisions.

KELLY v. KELLY

[228 N.C. App. 600 (2013)]

those material and ultimate facts from which it can be determined whether the findings are supported by the evidence and whether they support the conclusions of law reached.

. . . .

There are two kinds of facts: Ultimate facts, and evidentiary facts. Ultimate facts are the final facts required to establish the plaintiff's cause of action or the defendant's defense; and evidentiary facts are those subsidiary facts required to prove the ultimate facts.

. . . .

Ultimate facts are those found in that vaguely defined area lying between evidential facts on the one side and conclusions of law on the other. In consequence, the line of demarcation between ultimate facts and legal conclusions is not easily drawn. An ultimate fact is the final resulting effect which is reached by processes of logical reasoning from the evidentiary facts. Whether a statement is an ultimate fact or a conclusion of law depends upon whether it is reached by natural reasoning or by an application of fixed rules of law.

In summary, while Rule 52(a) does not require a recitation of the evidentiary and subsidiary facts required to prove the ultimate facts, it does require specific findings of the ultimate facts established by the evidence, admissions and stipulations which are determinative of the questions involved in the action and essential to support the conclusions of law reached.

. . . .

The purpose of the requirement that the court make findings of those specific facts which support its ultimate disposition of the case is to allow a reviewing court to determine from the record whether the judgment-and the legal conclusions which underlie it-represent a correct application of the law. The requirement for appropriately detailed findings is thus not a mere formality or a rule of empty ritual; it is designed instead to dispose of the issues raised by the pleadings and to allow the appellate courts to perform their proper function in the judicial system.

**KELLY v. KELLY**

[228 N.C. App. 600 (2013)]

*Quick v. Quick*, 305 N.C. 446, 451-52, 290 S.E.2d 653, 657-58 (1982) (citations, quotation marks, and ellipses omitted).

Defendant faults the trial court's order for its brevity, stating:

> In the present case, the Court has entered a bare bones three (3) page order, with insufficient evidence to support the findings of fact and conclusions of law, to support its denial of Mr. Kelly's Motion to Modify Alimony. The Court, after hearing three days of testimony involving valuable assets, the finances of a law firm, staggering debt and reviewing extensive financial records made a mere eighteen findings of fact, only twelve of which related to the evidence offered at trial.

But brevity is not necessarily a bad thing; Cicero said that "[B]revity is the best recommendation of speech, not only in that of a senator, but too in that of an orator," or, we might add, in many instances, a judge. Marcus Tulius Cicero, *On the Laws: Book III, in* The Treatises of M.T. Cicero 479 (C.D. Yonge trans., 1878). The trial court found the ultimate facts which were raised by the defendant's motion to modify, and where the evidence supports these findings, that is sufficient. "The court is not required to find all facts supported by the evidence, but only sufficient material facts to support the judgment." *Medlin v. Medlin*, 64 N.C. App. 600, 603, 307 S.E.2d 591, 593 (1983) (citations omitted).

Defendant presented evidence that his firm experienced some changes since the original order for alimony, but detailed findings about those changes would be needed only to the extent that the changes have substantially reduced defendant's income and therefore his ability to pay.

Defendant argues that his practice, particularly in the areas of personal injury and real estate, has suffered due to changes in the United States' economy in general and to the increases in competition. Although we could probably take judicial notice that the United States economy in general has suffered in many ways since 2004, the actual numbers presented to the trial court in the income tax returns of the defendant and his law firm support the trial court's finding that defendant's income has fluctuated but not decreased substantially. Defendant may disagree with the trial court's finding that any decreases in the two most recent years in his income have not been "substantial" and that his business has not changed in a material way, but the trial court clearly considered the evidence, weighed its credibility, and made appropriate findings based on the evidence. This Court cannot substitute its judgment for that of the trial court in this situation.

Defendant next argues that "the trial court erred in its failure to identify" the nature and scope of the "other financial benefits" he receives from his law firm. Again, defendant does not claim that there was no evidence of "other financial benefits"—he simply argues that the trial court must list them. Specifically, the trial court made the following ultimate finding of fact:

> 14. That Defendant has financial benefits through his law firm partnership that might not be considered taxable income but affect his ability to maintain his standard of living.

The evidence as to the "other financial benefits" is quite simple. Defendant's own testimony was that his law firm purchased his 2009 Lexus and 2009 Suburban vehicles, pays for his car insurance, his cell phone, his car maintenance, and most of his gasoline expense, among other things. This evidence alone supports finding of fact 14 and there was no need for the trial court to list these benefits in detail.

Defendant also argues that the trial court erred because it "fail[ed] to consider [or find sufficient facts regarding] . . . the depletion of his separate estate . . . ." (original in all caps). However, the trial court explicitly addressed this alleged depletion and found it to be "voluntary":

> 13. Since the entry of the Alimony order Defendant has been able to add contributions to a 401(k) plan in his name in the amount of approximately $104,000.00, with $24,000 in the last year alone.
>
> . . .
>
> 15. Defendant was able to make $21,000 in improvements to his beach house in the past year, in addition [to] buying an aluminum boat and trailer with a cost of over $12,000.
>
> 16. Defendant was able to make a loan to his son in 2011 of close to $31,000.

Although defendant argues that his assets were more depleted than the trial court found and that many of his expenses were not voluntarily incurred, the trial court properly weighed the evidence and made its findings. The fact that the trial court did not agree with defendant's contentions is not a basis for reversal. Therefore, defendant's argument that the trial court failed to consider the depletion of his estate is without merit.

Defendant further argues that the trial court erred "in its failure to detail what [his] assets and debts are." (original in all-caps). The trial

court found that defendant's assets and debts "are similar to the assets and debts that existed at the time of the alimony order." Of course, to understand what the trial court found the defendant's assets and debts to be "similar to," we must know what the assets and debts in 2004 were. In this case, unlike many in which the prior order is a consent order, the alimony order and record do contain detailed information as to the parties' assets and debts in 2004, and defendant does not contend that the trial court must first make detailed findings as to the state of affairs in 2004 before determining if there has been a substantial change.

Defendant also does not claim that the finding that his assets and debts "are similar" to those in 2004 is not supported by the evidence, which does include vast amounts of detailed information as to his assets and debts in both 2004 and at the time of the hearing; he simply faults the trial court for not specifically listing his assets and debts in the order. We have reviewed the evidence as to defendant's assets and debts, and it supports the trial court's finding that his assets and debts are "similar" to those in 2004, and we shall not list them in detail in this opinion either. The law does not require a "recitation of the evidentiary and subsidiary facts" underlying a trial court's findings. *Moore*, 160 N.C. App. at 571, 587 S.E.2d at 75.

Given the detailed previous order, a more detailed account of defendant's debts and assets was not "determinative" or "essential" to the trial court's conclusion that no substantial change had occurred. *See Williamson v. Williamson*, 140 N.C. App. 362, 363-64, 536 S.E.2d 337, 338 (2000). The findings as discussed above adequately addressed the issues presented and permit meaningful appellate review.

Defendant next contends that the trial court "fail[ed] to consider" or find sufficient facts regarding his "increased age and declining health." (original in all caps). The 2004 alimony order included a finding that defendant had "high blood pressure, and inherited kidney problems." Defendant contends that he now also suffers from "depression, sleep withdrawal, [and] type II diabetes." He also correctly points out that he is eight years older than he was when the original alimony award was entered.[5]

The trial court found that Defendant is working full time. Defendant did not present evidence as to how his health problems affected his ability to work or his ability to pay the required alimony. Indeed, although

---

5. We note that plaintiff is also 8 years older, and that the trial court found that she was 71 at the time of the modification order.

KELLY v. KELLY

[228 N.C. App. 600 (2013)]

defendant mentioned his health problems at the hearing, he did not relate his health to a reduction in his income. He acknowledged that he was already under treatment for high blood pressure and his kidney disease in 2004, and described his kidney medication as "Allopurinol for kidney stones. It's not a big deal." He acknowledged that he had had "depression issues for 20 years, 30 years, for a long time" but that he had not taken medication until more recently. But as noted above, the relevance of defendant's medical condition was his claim that it was contributing to his reduction in income; the trial court found that his income was not substantially reduced. It is true that worsening health may result in a decline in income, but it is not automatic. The defendant's income numbers, as noted above, support the trial court's findings that his income has not substantially decreased, and thus the trial court did not err in not making detailed findings as to defendant's health.

With regard to plaintiff's financial need, defendant argues that the trial court erred because it "fail[ed] to consider [or find sufficient facts regarding] . . . plaintiff's squandering of $1,000,000" and that it "fail[ed] to distinguish between reasonable necessary expenses . . . and frivolous debt incurred by plaintiff . . . ." (original in all caps). Defendant's argument focuses on his claim that plaintiff has an "exhorbitant, irrational and wasteful lifestyle" and is not so much that plaintiff's expenses have *actually* decreased since 2004, but that they *should have* decreased, if she had managed her financial affairs since 2004 in a way that he would consider appropriate and responsible. After examining the evidence, the trial court found that plaintiff's needs have "not decreased substantially," and also found that her "expenses have . . . increased." (emphasis added).

These findings are supported by the evidence and they show that the trial court properly considered plaintiff's expenses and financial needs and rejected defendant's contention that they had decreased substantially. Actually, plaintiff's financial affidavit[6] in 2004 indicated "total monthly expenditures" of $24,415.62, while her 2012 affidavit indicated "total monthly living expenses" of $25,648.43, so the evidence did show that plaintiff's expenses had increased, but not very much.

As defendant's ability to pay had not changed and the trial court was not considering an increase in defendant's alimony obligation based upon its finding that plaintiff's expenses have actually increased, there was no need for the trial court to make more detailed findings as to why plaintiff's expenses had failed to decrease. Defendant has not cited,

---

6. The 2004 alimony order incorporated plaintiff's affidavit by reference, although neither party admitted "the reasonableness of the other party's expenses."

nor have we found, any law that would affirmatively require plaintiff to reduce her living expenses over time, even if in 2004 she might have had the potential to do so by foregoing certain luxuries and making profitable investments. The evidence showed that her expenses had not decreased and the trial court did not abuse its discretion by making this finding.

Defendant also argues that the trial court erred "in its failure to detail what [plaintiff's] assets and debts are." (original in all caps). For the same reasons that a recitation of defendant's assets and debts was not necessary, a recitation of plaintiff's assets and debts also was not necessary. *See Moore,* 160 N.C. App. at 571, 587 S.E.2d at 75.

The trial court's findings address the relevant ultimate facts raised by defendant's motion to modify. The findings show that the trial court considered all relevant factors as to the alleged changes in circumstances since the 2004 alimony order. Therefore, defendant's arguments to the contrary are unavailing.

### V. Conclusion of Law

Defendant argues throughout his brief that the trial court erred in concluding that there has been no substantial change of circumstances to warrant a modification of alimony.

> [I]t is apparent that not any change of circumstances will be sufficient to order modification of an alimony award; rather, the phrase is used as a term of art to mean a *substantial* change in conditions, upon which the moving party bears the burden of proving that the present award is either inadequate or unduly burdensome.

*Britt,* 49 N.C. App. at 470, 271 S.E.2d at 926 (citations omitted).

A change in circumstances sufficient to modify alimony "must bear upon the financial needs of the dependent spouse or the ability of the supporting spouse to pay, rather than post-marital conduct of either party." *Id.* at 470-71, 271 S.E.2d at 926 (citations and quotation marks omitted). In considering whether alimony should be modified, "[t]he present overall circumstances of the parties must be compared with the circumstances existing at the time of the original award in order to determine if there has been a substantial change." *Id.* at 474, 271 S.E.2d at 928 (citations and quotation marks omitted).

Here, defendant failed to carry his burden of showing that relevant circumstances have substantially changed since the initial alimony award. "The[] facts [as found by the trial court] reveal that [defendant]

has both money and property, and, taken as a whole, do not support [a] conclusion that the alimony payments should be reduced." *Id.* at 471, 271 S.E.2d at 927. Additionally, the trial court found that plaintiff's needs have not substantially decreased. The evidence supports these findings and these findings support the trial court's conclusion that there has been no substantial change of circumstances. Further, the findings show that the trial court properly compared the present overall circumstances of the parties with the circumstances at the time of the initial alimony award. Therefore, we conclude that the trial court did not abuse its discretion is declining to modify the alimony award and affirm the order denying defendant's motion to modify.

## VI. Conclusion

The trial court's findings are supported by the evidence. Those findings support the trial court's conclusion that defendant has failed to show that circumstances have substantially changed since the 2004 alimony order. Therefore, we affirm the trial court's order denying defendant's motion to modify alimony.

AFFIRMED.

Judges CALABRIA and DAVIS concur.