IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-950

Filed 5 December 2023

Mecklenburg County, No. 15 CVD 17121

JENNIFER GROSECLOSE, Plaintiff/Mother,

v.

ALAN GROSECLOSE, Defendant/Father.

Appeal by defendant from order entered 16 December 2021 by Judge Tracy H. Hewett in Mecklenburg County District Court. Heard in the Court of Appeals 5 September 2023.

*James, McElroy & Diehl, P.A., by Preston O. Odom, III, Haley E. White, and Kristin J. Rempe, for plaintiff-appellee.*

*Wofford Burt, PLLC, by J. Huntington Wofford and Rebecca B. Wofford, for defendant-appellant.*

ZACHARY, Judge.

Defendant Alan Groseclose ("Father") appeals from the trial court's order denying his motion for modification of permanent child support and permanent alimony, and granting Plaintiff Jennifer Groseclose's ("Mother") motion for contempt. After careful review, we affirm in part and remand for additional findings of fact and conclusions of law.

## I.    Background

Mother and Father were married in 2000, separated in 2014, and divorced

thereafter. One child was born of the marriage. On 3 December 2015, the trial court entered a temporary support order addressing postseparation support and child support (together, "temporary support"). The court ordered Father to pay:

> $726.37 per month in ongoing temporary child support; . . . $11,848.52 in child support arrears at the rate of $300.00 per month; . . . $400.00 per month in ongoing postseparation support; . . . $800.00 in postseparation support arrears at the rate of $100.00 per month; and . . . $7,444.50 in attorney's fees to [Mother]'s counsel at the rate of $200 per month.

Father filed his first motion to modify 20 days later, alleging that he suffered a substantial decrease in income and seeking a reduction in his temporary support obligations. Father was then late in paying his temporary support and attorney's fees for several months of 2016, and failed to make any payments in October, November, or December of that year. Mother filed her first motion for contempt. On 3 January 2017, the trial court entered a permanent support order, denying Father's motion to modify, granting Mother's motion for contempt, and ordering Father to pay

> $2,579 in temporary support arrears and $600 in attorney's fees obligations; . . . $803.61 per month in permanent child support; . . . $1,000 per month in alimony until December 30, 2020; and . . . $18,000 in attorney's fees at the rate of $225 per month until paid in full.

Father filed two more motions to modify his support obligations in 2017, while the parties' equitable distribution action reached its conclusion. On 19 September 2017, the trial court entered its equitable distribution order, awarding Mother "a distributive award of $158,141.00 [payable by Father] at a rate of $1,000 per month

until paid in full in order to achieve an equal distribution of the marital estate." The trial court made a finding of fact that Father "had the ability to pay such a distributive award."

On 3 December 2018, Father filed his fourth motion to modify, again alleging a substantial decrease in his income and requesting that the trial court reduce his child support and alimony obligations. On 18 June 2020, Mother filed another motion for contempt, alleging that Father had failed to pay his child support, alimony, attorney's fees, and distributive award payments.

On 12 February and 3 March 2021, the parties' motions came on for hearing in Mecklenburg County District Court. On 16 December 2021, the trial court entered an order denying Father's motion to modify and granting Mother's motion for contempt. The trial court also ordered Father to pay Mother an additional sum in reimbursement for her attorney's fees. On 14 January 2022, Father timely filed notice of appeal.

## II.    Discussion

Father argues that the trial court erred by denying his motion to modify his child support and alimony obligations and by granting Mother's motion for contempt.

## A. Modification of Child Support and Alimony

Father first contends that the trial court abused its discretion by denying his motion for modification "where the findings of fact supported changed circumstances[,]" namely, "an involuntary decrease in [Father's] income" and

Father's persistent health concerns. We do not find Father's arguments as to this issue to be persuasive. Father also argues that the trial court's "findings of fact lacked detail to support the finding" of his actual monthly income. On this issue, we agree and remand for additional findings of fact.

### 1. *Standard of Review and Applicable Legal Principles*

Generally, the amount of child support and alimony is "left to the sound discretion of the trial judge and will not be disturbed on appeal unless there has been a manifest abuse of that discretion." *Shirey v. Shirey*, 267 N.C. App. 554, 559, 833 S.E.2d 820, 824 (2019) (citation omitted), *disc. review denied*, 376 N.C. 675, 853 S.E.2d 159 (2021). "A trial court abuses its discretion when it renders a decision that is manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision." *Id.* at 560, 833 S.E.2d at 825 (cleaned up).

"When the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Id.* at 559–60, 833 S.E.2d at 824–25 (citation omitted). "When the trial judge is authorized to find the facts, [its] findings, if supported by competent evidence, will not be disturbed on appeal despite the existence of evidence which would sustain contrary findings." *Kelly v. Kelly*, 228 N.C. App. 600, 605, 747 S.E.2d 268, 275 (2013) (citation omitted). While "the trial court need not recite all of the evidentiary facts[,]" it still "must find those material and ultimate facts from which it can be determined whether the findings

are supported by the evidence and whether they support the conclusions of law reached." *Id.* at 606–07, 747 S.E.2d at 276 (citation omitted). We review de novo the trial court's conclusions of law. *Shirey*, 267 N.C. App. at 560, 833 S.E.2d at 825.

An order for child support or alimony may be modified "upon motion in the cause and a showing of changed circumstances by either party[.]" N.C. Gen. Stat. §§ 50-13.7(a), -16.9(a) (2021). The movant bears the burden of showing a change of circumstances in order to modify either child support or alimony. *Thomas v. Thomas*, 134 N.C. App. 591, 592, 518 S.E.2d 513, 514 (1999) (child support); *Britt v. Britt*, 49 N.C. App. 463, 470, 271 S.E.2d 921, 926 (1980) (alimony).

In both contexts, the change of circumstances must be *substantial*. For example, for the purposes of modifying alimony, this Court has made clear that

> not *any* change of circumstances will be sufficient to order modification of an alimony award; rather, the phrase is used as a term of art to mean a *substantial* change in conditions, upon which the moving party bears the burden of proving that the present award is either inadequate or unduly burdensome.

*Britt*, 49 N.C. App. at 470, 271 S.E.2d at 926. Meanwhile, the "modification of a child support order involves a two-step process. The court must first determine a *substantial* change of circumstances has taken place; only then does it proceed to apply the [Child Support] Guidelines to calculate the applicable amount of support." *McGee v. McGee*, 118 N.C. App. 19, 26–27, 453 S.E.2d 531, 536 (emphasis added), *disc. review denied*, 340 N.C. 359, 458 S.E.2d 189 (1995).

- 5 -

### 2. *The Trial Court's Findings of Fact*

In its order, the trial court made the following pertinent findings of fact regarding the lack of a substantial change of circumstances for the purposes of modifying child support and/or alimony:

23. The Court does **not** find that there has been a substantial change in circumstances such that permanent child support or alimony should be modified.

24. In the January 3, 2017 Permanent Support Order, the Court found as follows:

    a. [Mother]'s income from her full-time job at Calvary Church is $2,594.73 gross per month and $1,974.45 net per month.

    b. Two-thirds (2/3) of [Mother]'s shared family expenses should be attributed to [Mother]. Thus, [Mother]'s portion of the shared family expenses is $1,699.90 per month.

    c. [Mother]'s monthly individual expenses are $1,493.83.

    d. [Mother]'s total monthly needs and expenses are $3,193.73, plus her child support obligation of $305.89 pursuant to the North Carolina Child Support Guidelines.

    e. [Mother] has a monthly shortfall in excess of $2,300.

    f. [Father]'s testimony regarding his income was not credible.

    g. [Father]'s income from employment is $6,067.90 gross per month.

h. [Father] received money from friends to help him pay his living expenses and attorney's fees in the average amount of $750 per month. [Father] testified that this monetary support from friends was a "loan" or series of "loans." However, [Father] failed to present any evidence to support his contention that the additional monetary support were loans.

i. [Father]'s portion of the shared family expenses is $1,740.95 per month. [Father]'s individual expenses are $583.00 per month. [Father]'s total monthly needs and expenses are $2,323.95, plus his child support obligation of $803.61.

j. After mandatory deductions listed on his paystub, [Father]'s total monthly net income is $6,273.26. After subtracting his total monthly needs and expenses and his child support obligation, [Father] has a monthly surplus of $3,145.70.

25. The Permanent Support Order awarded [Mother] monthly alimony of $1,000 per month for a period of five (5) years or sixty (60) months.

26. [Father]'s current Fourth Motion to Modify was filed on December 3, 2018 after he became unemployed due to his employer in Virginia Beach, Virginia changing management or otherwise reorganizing such that the "last in was the first out" and [Father] was the "last in." The Court does not find that [Father]'s income changed substantially at that time as he received unemployment benefits, severance pay, and his living expenses were paid by his sister. Additionally, [Father] began receiving financial assistance from his girlfriend . . . in 2018. The Court acknowledges and finds as fact that when [Father] was employed in Virginia Beach, he paid his court-ordered obligations.

27. In April 2019, [Father] moved in with [his girlfriend] and continued living a lifestyle with no substantial economic difference, except the majority of his income came from [his girlfriend] by way of her payment of his living expenses and alleged "loans," which this Court finds were actually regular, recurring gifts and not loans.

28. The Court does not find that either of the "loans" evidenced by promissory notes signed by [Father] and [his girlfriend] are truly loans for the following reasons:

    a. Though the terms call for payments to begin, no payments have ever been made, despite the fact that [Father] had voluntary deductions totaling $1,093.31 from his Lowe's pay which would have covered either or both of the "loan" payments cited in the promissory notes.

    b. [Father] has experience with the courts such that he knew that he would need to have evidence that money given to him is to be paid back (*i.e.*, a loan) and therefore, he attempted to create evidence of such.

    c. Despite his experience with the courts, [Father] never disclosed any other gifts paid on his behalf, nor that he lived with [his girlfriend], and had access to her bank account via his own debit card attached to that account, despite being asked in discovery.

    d. During his testimony, [Father] cited his advanced age (64 years old), his poor health (which he also cited 4 years ago at the equitable distribution trial), his inability to secure a better paying job, no savings, no property, no investments, and little credit available. Accordingly, the Court finds that

[Father] and [his girlfriend] could not, in good faith, have signed the promissory notes setting forth 5 and 10 year terms for repayment and intended that [Father] would repay the loans according to the terms in the promissory notes.

e. The loans are unsecured with no penalty for non-payment or late payment.

f. The loan documents and promissory notes were prepared just prior to the deadline for the filing of Financial Affidavits, wherein the parties are required to disclose debts and provide documentation evidencing such debts.

g. *See Lowe v. Lowe*, 2005 N.C. App. LEXIS 1025 (2005), which provides that loans from close family members should be closely scrutinized for legitimacy and failure to make payments on loans for several years when funds are available to do so is evidence that the loans are illusory. The alleged "loans" from [Father's girlfriend] to [Father] do not pass such scrutiny and the evidence shows that the "loans" are illusory.

29. In addition to the purported "loans" from [Father's girlfriend] (which the Court finds were not loans at all, but were gifts which should be included in [Father]'s income) almost all of [Father]'s living expenses were either paid directly by [his girlfriend] or by the authorized use of her bank account and debit card.

. . . .

32. [Father] has a cavalier and entitled attitude toward money that became apparent though his testimony and actions, including, but not limited to:

a. When questioned about his failure to pay

support to [Mother], [Father] responded: "If I pay her, I can't pay something else."

b. [Father]'s Financial Affidavit listed voluntary deductions from his paycheck totaling approximately $1,093.31 per month. [Father] listed a monthly garnishment of $568.90 on his Financial Affidavit, and he testified that the garnishment had been satisfied in January 2021, prior to the filing of his verified Financial Affidavit.

c. [Father] spent significant amounts of money on alcohol and shopping at higher end grocery stores and gourmet shops.

d. The last entry in [Father]'s job search log was May 6, 2019. [Father] has not continued to search for higher paying employment in line with his skills and abilities.

e. [Father]'s Financial Affidavit states that his average monthly net income is $640.38 and his monthly needs and expenses are $1,921.31. [Father]'s statement that "no one can live on $640.38 per month" further demonstrates his attitude of entitlement to a certain lifestyle.

f. [Father] took a 6 week leave of absence from his job at Lowe's because he "thought" he had COVID. Notably, this was right around the same time that [Father] received a tax refund.

g. The Court previously found that [Father] incorporated and ran several coin businesses, and that fact has not changed. In fact, [Father]'s most recent well-paid employment was in the coin business.

h. [Father] earned his real estate license, which is a difficult undertaking. This demonstrates

to the Court that even if [Father] was unable to sell houses and subsequently let his real estate license lapse, that he has the ability to earn more than he is earning at his current job.

i. The history of this case shows that [Father] did not make any support payments to [Mother] until he was court ordered to do so.

j. [Father] has filed multiple motions to modify support and there have been multiple motions for contempt filed against him. [Mother] has prevailed on her motions for contempt. [Father]'s motions to modify support have either been voluntarily dismissed by [Father] or denied by the Court.

k. Prior Court Orders have found as a fact that [Father] is not entirely credible.

l. [Father]'s actions show a pattern of fluctuating income but a consistent relatively high standard of living.

33. At present, the Court finds [Father]'s gross monthly income to be $6,526.18 per month. This is comprised of (a) $2,355.43 from Lowe's; (b) $2,758.75 from monetary "loans" from [his girlfriend], which the Court finds to be gift income; (c) $1,412 from additional regular, recurring gifts by way of [his girlfriend] paying [Father]'s living expenses, directly and through [Father]'s use of her bank account. After mandatory deductions set forth on [Father]'s paystub, [Father]'s net monthly income is $5,904.44. This income is [Father]'s actual income from all sources. The Court does not find bad faith such that it will impute income to [Father].

34. At present, the Court finds that [Father]'s shared monthly expenses are $500 per month that he pays to [his girlfriend]. [Father]'s individual expenses are

$71.00 per month. Additionally, his court ordered obligations including a monthly child support obligation of $803.61, the Equitable Distributive award of $1,000 per month, and attorney's fees payment of $225.00 per month. [Father]'s monthly expenses total $2,599.61, leaving him a monthly surplus of $3,304.83. [Father] therefore has the ability to pay $1,000 each month in alimony.

. . . .

37. [Mother] has a monthly shortfall of $1,027.52. Her current monthly shortfall is lower than what the Court found in the January 3, 2017 Permanent Support Order and approximately 2.8% more than the amount of alimony that was originally ordered in the Permanent Support Order.

38. The Court finds that [Mother] had no choice but to reduce her personal expenses in November 2018 when [Father] unilaterally began paying only $50 per month toward his alimony obligation, which is only 5% of the court-ordered amount. After [Father] reduced his support payments, [Mother] took on a temporary part-time job as a delivery driver for Uber Eats for a few months to help make ends meet. The Court does not consider [Mother]'s temporary income for these calculations.

. . . .

## Alimony

41. This Court considered two possible calculations for alimony, neither of which the Court finds to be a substantial change in circumstances such that alimony should be modified.

42. For both calculations, the Court used [Father]'s income as set forth above.

    a. The first calculation is based on [Mother]

receiving the entire distributive award payment of $1,000 per month from [Father]. [Mother]'s monthly income is $3,744.27 when she receives the entire $1,000 distributive award payment. [Mother]'s reasonable monthly expenses of $2,861.89, plus her monthly child support obligation of $442.60, equals $3,304.49. In this scenario, there is no shortfall, but only a slim $347 per month left over after her expenses. This Court finds that alimony of $1,000 per month would still be awarded and appropriate. This Court is constrained from reconsidering dependency that was already established by the Permanent Support Order. *See Cunningham v. Cunningham*, 345 N.C. 430, 480 S.E.2d 403 (1997). The Court considers the following:

i.   [Father]'s marital misconduct, *i.e.*, abandonment, under N.C.G.S. § 50-16.3A according to the Permanent Support Order, Finding of Fact No. 19, "[Father] moved to Hawaii without informing [Mother] or the minor child of his intentions or whereabouts," which left [Mother] without any financial support ([Father] did, however, leave her with debt) or even knowledge as to where [Father] was living;

ii.  The extent to which the earning power, expenses, or financial obligations of a spouse will be affected by reason of serving as the custodian of the minor child; and

iii. That the standard of living during the marriage was significantly higher than the modest $2,861.89 cited in [Mother]'s Financial Affidavit, which is the result of [Mother] being forced to reduce her expenses from the standard of living she

enjoyed during her marriage.

b. The second calculation is based on [Father] only paying a fraction of the distributive award payment. Since November 1, 2018, [Father] has only been paying $50 (or 5%) of the distributive award payment such that [Mother]'s income for alimony purposes would only be increased by $50 per month, which results in a shortfall of $997.52, which is approximately 3% less than what is currently ordered in the Permanent Support Order.

43. [Father] has failed to show a substantial change in circumstances such that his alimony obligation should be modified.

## **Child Support**

44. The Court considered [Mother]'s income including the $1,000 per month alimony payment and the $1,000 distributive award payment (even though she has not been receiving the court-ordered amounts of those payments since November 2018) and determined that the calculation does not result in a 15% or more decrease to [Father]'s child support obligation.

a. [Father]'s gross monthly income is $6,526.18. If the $1,000 monthly alimony payment is added to [Mother]'s gross income for child support purposes, the North Carolina Child Support Guidelines have her child support obligation at $442.60. [Father]'s child support obligation would be $771.44 which is approximately only 4.2% lower than the current ordered amount of $803.61.

b. If the Court adds both the $1,000 monthly alimony payment and the $1,000 distributive award payment to [Mother]'s gross income, her child support obligation would be $552.30.

[Father]'s child support obligation would be $759.74 which is approximately 5.8% lower than the current ordered amount of $803.81.

c. If the Court considers what [Mother] has <u>actually</u> received since November 1, 2018 (*i.e.*, $50 in monthly alimony and $50 in monthly distributive award payments), her gross income would be $2,844.27, which results in a child support obligation of $453.38. [Father]'s child support obligation would be $818.22, which is approximately 2% higher than the court ordered amount of $803.81.

45. [Father] failed to present evidence of a substantial change in circumstances sufficient to justify a downward modification of his alimony obligation and permanent child support obligation and his Motion to Modify should be denied.

### 3. *Substantial Change of Circumstances*

Father first argues that the trial court erred by failing to find a substantial change of circumstances where he met his burden of showing such a change "based on an involuntary decrease in his income." As Father notes, it is undisputed that he "lost his job in October 2018, and then remained unemployed until he found a new job paying significantly less than he earned prior to his unemployment." Father contends that he suffered "a decrease of more than 60% from his income from employment when the Support Order was entered. Such a decrease in income is clearly substantial and should have been sufficient for the trial court to find a substantial change in circumstances and to modify [his] support obligation."

However, this Court has repeatedly recognized that "[t]he fact that a husband's

salary or income has been reduced substantially does not automatically entitle him to a reduction" of either child support or alimony. *Wolf v. Wolf*, 151 N.C. App. 523, 526, 566 S.E.2d 516, 518 (2002); *see also Britt*, 49 N.C. App. at 470, 271 S.E.2d at 926 ("[A] conclusion of law that there has been a substantial change of circumstances based only on income is inadequate and in error."). "There cannot be a conclusion of substantial change in circumstances based solely on change in income. The overall circumstances of the parties must be compared with those at the time of the award." *Patton v. Patton*, 88 N.C. App. 715, 719, 364 S.E.2d 700, 703 (1988) (citation omitted). In the instant case, the trial court made that comparison and determined that Father failed to show a substantial change of circumstances.

Father primarily contends that "[t]he trial court improperly made findings of fact under a capacity to earn analysis and then made an inconsistent ultimate finding of fact that [its] analysis was based on" his "actual income[.]" This assertion is misplaced.

"The trial court may refuse to modify support and/or alimony on the basis of an individual's earning capacity instead of his actual income when the evidence presented to the trial court shows that a husband has disregarded his marital and parental obligations . . . ." *Wolf*, 151 N.C. App. at 526, 566 S.E.2d at 518. "When the evidence shows that a party has acted in 'bad faith,' the trial court may refuse to modify the support awards. If a husband has acted in 'good faith' that resulted in the reduction of his income, application of the earnings capacity rule is improper." *Id.* at

527, 566 S.E.2d at 519 (citation omitted).

Father specifically highlights those portions of the trial court's finding of fact 32 that seem to address his "intent with regard to income and spending money" to argue that the trial court improperly conducted an earning-capacity analysis, despite its seemingly contradictory finding that Father had not acted in bad faith. "[H]owever, the trial court never reached the step of calculating [Father]'s child support [or alimony] obligation, since the trial court found no change of circumstances warranting a modification of [his] current obligation. Therefore, [Father]'s discussion of the earning capacity rule is incorrect." *Armstrong v. Droessler*, 177 N.C. App. 673, 677–78, 630 S.E.2d 19, 22 (2006).

Rather than conducting an earning-capacity analysis, the trial court's extensive findings concerning Father's "cavalier and entitled attitude toward money" provide an illustrative context for the trial court's finding that Father "continued living a lifestyle with no substantial economic difference, except the majority of his income came from" his girlfriend. Indeed, the final two paragraphs of finding of fact 32, which Father does not specifically challenge in his appellate brief, state that Father "is not entirely credible" and that his "actions show a pattern of fluctuating income but a consistent relatively high standard of living."

We conclude that "[i]n the present case, the trial court did not impute income to [Father] as a result of voluntary unemployment or underemployment, but rather was merely attempting to determine what [Father] actually earned in [2021].

Consequently, the law of imputation is inapplicable." *Diehl v. Diehl*, 177 N.C. App. 642, 650, 630 S.E.2d 25, 30 (2006).

### 4. *Calculation of Father's Income*

Father next complains that the trial court "did not use [his] actual income as a basis for the calculation of his income." First, the North Carolina Child Support Guidelines explicitly state that a parent's income includes "gifts . . . or maintenance received from persons other than the parties to the instant action." N.C. Child Support Guidelines, at 3 (2019).

> When income is received on an irregular, non-recurring, or one-time basis, the court may average or prorate the income over a specified period of time or require an obligor to pay as child support a percentage of his or her non-recurring income that is equivalent to the percentage of his or her recurring income paid for child support.

*Id.* Additionally, this Court has observed that "[t]here appears to be no good reason to employ a different definition of income for the purposes of a child support award than for an alimony award." *Glass v. Glass*, 131 N.C. App. 784, 788, 509 S.E.2d 236, 239 (1998).

Mother submits in her brief on appeal that the facts of this case resemble those of *Onslow County v. Willingham*, in which the defendant-father testified that a female "friend" with whom he shared a joint bank account "contributed about $800.00 per month into the joint [bank] account and that she had been giving him this financial assistance in the form of a loan for about three months." 199 N.C. App. 755, 687

S.E.2d 541, 2009 WL 2929305, at \*5 (2009) (unpublished).[1] The trial court, however, did not find the defendant-father's "assertion that said deposits were loans to be credible[,]" and this Court recognized that the trial court "was not bound to accept [the defendant-father's] assertion that any of the recurring, financial assistance provided to him was in the form of loans." *Id.* Indeed, the defendant-father "did not produce any documentation or other evidence to show that these deposits were loans." *Id.*, at \*6. Therefore, we concluded that "[i]n accordance with the Guidelines, these deposits could be classified as 'gifts' or 'maintenance received from persons other than the parties to the instant action.' " *Id.*

Although an unpublished decision of this Court, and therefore not binding authority, we find our previous decision in *Willingham* to be persuasive in guiding our analysis of the trial court's findings in the case at bar. As quoted above, the trial court found that the "alleged 'loans' . . . were actually regular, recurring gifts and not loans[,]" and made extensive findings of fact as to why it did "not find that either of the 'loans' evidenced by promissory notes signed by [Father] and [his girlfriend] [we]re truly loans." Just as in *Willingham*, the trial court's findings support its conclusion that these "alleged 'loans' " were properly classified as income to Father. Moreover, as in *Willingham*, the trial court here concluded that Father's testimony

---

[1] Although unpublished opinions do not have precedential value, "an unpublished opinion may be used as persuasive authority at the appellate level if the case is properly submitted and discussed and there is no published case on point." *Zurosky v. Shaffer*, 236 N.C. App. 219, 234, 763 S.E.2d 755, 764 (2014).

was not credible, a determination by which this Court is bound. *See Asare v. Asare*, 281 N.C. App. 217, 243, 869 S.E.2d 6, 25 (2022) ("The trial court is the sole judge of the credibility and weight of the evidence.").

### 5. *Father's Health*

Father also argues that "[t]he trial court failed to consider [his] health" in denying his motion to modify. Father cites this Court's opinion in *Kelly* in support of his contention that "[w]orsening health, although not automatically a changed circumstance, must be considered in a modification proceeding as it may affect the obligor's ability to earn income or be reason for a decline in income." However, as Father acknowledges, "the relevance of [the *Kelly*] defendant's medical condition was his claim that it was contributing to his reduction in income" and yet, in *Kelly*, "the trial court found that his income was not substantially reduced." 228 N.C. App. at 611, 747 S.E.2d at 278. The trial court in this case similarly did not find that Father's income was substantially reduced, "and thus the trial court did not err in not making detailed findings as to [Father]'s health." *Id.*

In sum, the trial court did not err by determining that Father's decrease in income from employment alone was not sufficient to show a substantial change of circumstances; finding that Father's actual income included the gift income from his girlfriend; or declining to make detailed findings as to Father's health.

### 6. *Sufficiency of the Findings of Fact*

Nonetheless, while "the trial court need not recite all of the evidentiary facts[,]"

it still "must find those material and ultimate facts from which it can be determined whether the findings are supported by the evidence and whether they support the conclusions of law reached." *Id.* at 606–07, 747 S.E.2d at 276 (citation omitted).

"There are two kinds of facts: Ultimate facts, and evidentiary facts. Ultimate facts are the final facts required to establish the plaintiff's cause of action or the defendant's defense; and evidentiary facts are those subsidiary facts required to prove the ultimate facts." *Quick v. Quick*, 305 N.C. 446, 451, 290 S.E.2d 653, 657 (1982) (citation omitted), *superseded in part on other grounds*, N.C. Gen. Stat. § 50-13.4(f)(9) (1983).

> [W]hile Rule 52(a) does not require a recitation of the evidentiary and subsidiary facts required to prove the ultimate facts, it does require *specific findings* of the ultimate facts established by the evidence, admissions and stipulations which are determinative of the questions involved in the action and essential to support the conclusions of law reached.

*Id.* at 452, 290 S.E.2d at 658. Our Supreme Court has explained that this requirement is not a formality, but rather is essential to the process of appellate review:

> The purpose of the requirement that the court make findings of those specific facts which support its ultimate disposition of the case is to allow a reviewing court to determine from the record whether the judgment—and the legal conclusions which underlie it—represent a correct application of the law. The requirement for appropriately detailed findings is thus not a mere formality or a rule of empty ritual; it is designed instead to dispose of the issues raised by the pleadings and to allow the appellate courts to perform their proper function in the judicial system.

- 21 -

*Id.* (cleaned up).

Father contends that the trial court's "findings of fact lacked detail to support the finding" that Father's actual gross income was $6,526.18 per month. For example, Father argues that "the trial court did not make findings that would allow this [C]ourt to see how the trial [court] calculated the ultimate monthly amount of $1,412.00" in "regular, recurring gifts[.]" Although we have concluded that the trial court did not err in determining that Father's actual gross income included this gift income, and the record amply supports the trial court's determinations as to what to include or not to include in calculating Father's actual gross income, we agree with Father that the trial court's findings of fact leave us unable to determine precisely *how* it calculated Father's actual gross income.

"The findings of fact should address . . . how [the trial court] calculated [Father's actual] gross income based upon its consideration of the evidence presented." *Craven Cty. ex rel. Wooten v. Hageb*, 277 N.C. App. 586, 590, 861 S.E.2d 571, 574–75 (2021). Accordingly, because we cannot determine how the trial court used the evidence presented to calculate Father's actual gross income, we remand for additional findings of fact concerning this issue.

## B. Contempt

Father further argues that "[t]he trial court erred in holding [him] in contempt of court based on an ultimate conclusion that he has at all times had the ability to comply, but not making findings of fact supported by the evidence that he had the

ability to comply during the specific time periods at issue."

The trial court found as fact that Father was in substantial compliance with his child support obligation, but that he "has willfully failed to pay his court ordered financial obligations as to alimony, equitable distribution distributive award, and attorney's fee award, and is therefore in civil contempt." The trial court also found that Father "has, at all times, been fully aware of the Permanent Support [and Equitable Distribution] Order[s], has had full knowledge and understanding of the requirements of the Order[s], and has had the ability to comply with the Order[s]." The court determined that Father's failure to comply with those orders "is willful, wanton, deliberate, without justification, and constitutes a civil contempt of Court[,]" and set the following purge conditions:

> a. In addition to his ongoing obligations to pay prospective alimony, attorney's fee award payments, and distributive award payments, [Father] shall pay arrears to [Mother] as follows:
>
>> i. $5,000 within thirty (30) days of the entry of this Order;
>>
>> ii. $5,000 within sixty (60) days of the entry of this Order;
>>
>> iii. $5,000 within ninety (90) days of the entry of this Order;
>>
>> iv. $5,000 within one hundred and twenty (120) days of the entry of this Order.
>
> b. After payment of $20,000 as set forth above, [Father] will owe $43,184.50 in arrears as of September 30, 2021. Beginning on the first (1st) day of the first (1st)

month after the last $5,000 payment is due as set forth above, [Father] shall continue paying $2,500 per month towards his arrears until paid in full.

c. [Father] shall pay to [Mother] the sum of $17,919.15 as attorney's fees. The Court will hold a hearing at a later date to determine a payment schedule for [Father]'s payment of attorney's fees once he has satisfied his arrearages as set forth above.

### 1. *Standard of Review*

Appellate review of "contempt proceedings is limited to whether there is competent evidence to support the findings of fact and whether the findings support the conclusions of law." *Adkins v. Adkins*, 82 N.C. App. 289, 292, 346 S.E.2d 220, 222 (1986). "Findings of fact made by the judge in contempt proceedings are conclusive on appeal when supported by any competent evidence and are reviewable only for the purpose of passing upon their sufficiency to warrant the judgment." *Hartsell v. Hartsell*, 99 N.C. App. 380, 385, 393 S.E.2d 570, 573, *appeal dismissed in part and disc. review denied in part*, 327 N.C. 482, 397 S.E.2d 218 (1990), *aff'd per curiam*, 328 N.C. 729, 403 S.E.2d 307 (1991).

### 2. *Ability to Pay*

It is well established that "the trial court cannot hold a defendant in contempt unless the court first has sufficient evidence to support a factual finding that the defendant had the ability to pay, in addition to all other required findings to support contempt." *Cty. of Durham ex rel. Wilson v. Burnette*, 262 N.C. App. 17, 22, 821 S.E.2d 840, 846 (2018) (citation omitted), *aff'd per curiam*, 372 N.C. 64, 824 S.E.2d 397

(2019). Father compares this case to *Burnette*, in which the defendant "presented substantial evidence regarding his medical condition, his minimal living expenses, and his lack of income[,]" but the plaintiff "presented no evidence other than the amount of arrears owed, including any evidence regarding [the] defendant's ability to work, income, potential income, or assets." *Id.* at 23, 821 S.E.2d at 846. Father asserts that he similarly "presented evidence of his inability to pay and it was not refuted by" Mother; according to Father, "[t]he trial court's finding are, in essence, that she did not believe what he was saying to be true, but this is insufficient."

Indeed, it is axiomatic that "the trial court is the sole judge of credibility and weight of the evidence[.]" *Id.* Nonetheless, "although the trial court could find [the] defendant's evidence not to be credible, this does not create evidence for [the] plaintiff. The absence of evidence is not evidence." *Id.* (emphasis omitted). Therefore, the *Burnette* Court concluded that "even if the trial court determined not one word of [the defendant's evidence] to be true, we are then left with no evidence from [the] plaintiff other than the amount owed." *Id.*

However, Father's reliance on *Burnette* is misplaced. Unlike the facts presented in *Burnette*, Father's own evidence in the case at bar evinces his ability to pay. Here, the trial court found as fact that Father's "Financial Affidavit listed voluntary deductions from his paycheck totaling approximately $1,093.31" and that despite a "pattern of fluctuating income" Father has maintained "a consistent relatively high standard of living." Further, the trial court noted that Father "spent

significant amounts of money on alcohol and shopping at higher end grocery stores and gourmet shops," evidencing his "cavalier and entitled attitude toward money[.]" These findings are supported by competent evidence in the record, and in turn support the trial court's conclusion that Father had the ability to pay for the purposes of civil contempt. *Adkins*, 82 N.C. App. at 292, 346 S.E.2d at 222.

"Given the extensive evidence presented and findings made regarding [Father]'s income and expenses, we hold that the trial court's finding on present ability to pay is adequate." *Gordon v. Gordon*, 233 N.C. App. 477, 483, 757 S.E.2d 351, 355 (2014). Accordingly, the trial court's conclusion that Father is in contempt is affirmed.

### 3. *Purge Conditions*

Finally, Father argues that the trial court's "findings of fact are insufficient to warrant the purge conditions" because there was no showing that he had the present ability to satisfy the purge conditions. We agree, and remand for the trial court to consider this issue.

"To justify conditioning [a] defendant's release from jail for civil contempt upon payment of a large lump sum of arrearages, the district court must find as fact that [the] defendant has the present ability to pay those arrearages." *Tigani v. Tigani*, 256 N.C. App. 154, 160, 805 S.E.2d 546, 551 (2017) (citation omitted); *see also Burnette*, 262 N.C. App. at 38–39, 821 S.E.2d at 856 (remanding for additional findings of fact and conclusions of law, including conclusion as to the defendant's "present ability to

pay the full amount of any purge payments ordered"); *Bishop v. Bishop*, 90 N.C. App. 499, 502, 369 S.E.2d 106, 108 (1988) ("Since the instant order allows [the] defendant to purge his contempt by paying the entire $2,230 arrearage, the trial court would . . . be required to conclude [that the] defendant had the [present] ability . . . to pay the entire $2,230 arrearage in order to hold him in civil contempt.").

In the present case, although the trial court made sufficient findings of fact regarding Father's ability to pay his court-ordered support obligations, it failed to make a conclusion of law that he had the present ability to satisfy the purge conditions that it imposed. Accordingly, we must remand for the entry of a new order "including the required findings of fact . . . and conclusions of law for [Father's] present ability to pay the full amount of any purge payments ordered. The trial court may, in its discretion, receive evidence on remand." *Burnette*, 262 N.C. App. at 38–39, 821 S.E.2d at 856. "On remand, if the trial court holds [Father] in civil contempt, new evidence will be necessary to determine if [Father] has the *present* ability to pay any purge payments ordered." *Id.* at 39 n.11, 821 S.E.2d at 856 n.11.

## C. Attorney's Fees

Lastly, Father concludes his appellate brief with the following paragraph: "The trial court entered an award of attorney fees [sic] in its order. Her consideration of an award of such fees was based in significant part on her prior erroneous rulings as set forth herein. The attorney fees [sic] award should, therefore, be vacated." Father cites no authority nor makes any substantive argument other than summarily relying

upon his previous arguments, already discussed in this opinion.

"Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned." N.C.R. App. P. 28(b)(6). "An appellant avoids abandonment when it complies with the rule's mandate that '[t]he body of the argument . . . shall contain citations of the authorities upon which the appellant relies.' " *K2HN Constr. NC, LLC v. Five D Contr'rs, Inc.*, 267 N.C. App. 207, 213, 832 S.E.2d 559, 564 (2019) (alterations in original) (quoting N.C.R. App. P. 28(b)(6)). "This Court has routinely held an argument to be abandoned where an appellant presents argument without such authority and in contravention of the rule." *Id.* Father cites no legal authority in his argument concerning the trial court's award of attorney's fees; accordingly, this issue is "taken as abandoned." N.C.R. App. P. 28(b)(6).

## III.    Conclusion

For the foregoing reasons, we affirm the trial court's order in part and remand for additional findings of fact and conclusions of law (1) detailing the court's calculation of Father's actual income, and (2) stating whether Father has the ability to satisfy the purge conditions. The court may hear additional evidence on either issue, in its discretion.

AFFIRMED IN PART; REMANDED.

Judges HAMPSON and FLOOD concur.