IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-466

Filed 3 June 2026

Craven County, No. 22JA000015-240

IN THE MATTER OF: R.L.

Appeal by respondent-mother from order entered 4 December 2024 by Judge Debra L. Massie in District Court, Craven County. Heard in the Court of Appeals 11 March 2026.

*Craven County Department of Social Services, by James D. Dill, for petitioner-appellee Craven County Department of Social Services.*

*Troutman Pepper Locke LLP, by Joshua D. Davey, for guardian ad litem.*

*Jeffrey L. Miller for respondent-appellant-mother.*

STROUD, Judge.

Respondent Mother challenges an initial disposition and permanency planning order, arguing that the trial court erred by taking judicial notice of a Responsible Individuals List (RIL) order and by ceasing efforts to reunify the child with Mother. Because she did not object to the trial court taking judicial notice of the RIL order, Mother waived review of this issue. Further, we conclude the trial court did not err in ceasing reasonable efforts toward reunification. We therefore affirm.

## I. Procedural Background

On 15 February 2022, Craven County Department of Social Services (DSS)

filed a juvenile petition on behalf of Robbie,[1] contending he was an abused, neglected, and dependent juvenile.  Robbie was three months old and had bruises, a skeletal survey that revealed previous breaks and injuries, and a broken arm that did not match the parents' explanation.  On 18 April 2022, DSS filed an amended juvenile petition still alleging abuse, neglect, and dependency.  The hearing on adjudication was held on 18 and 19 September and 10 October 2023, and the trial court entered an order adjudicating Robbie as an abused juvenile on 18 January 2024.[2]

In 2022, both parents filed petitions for judicial review after finding out they were to be placed on the RIL.  On 10 October 2023, at the end of the adjudication hearing, the court considered the judicial review petitions; it took both the adjudication and the RIL petition under advisement.  On 18 January 2024, the trial court entered an adjudication order and the RIL orders.

The trial court held a disposition and permanency planning hearing on 30 January and 12 and 26 July 2024, and on 4 December 2024, entered a combined disposition and permanency planning order (Order), determining that reunification efforts were not required.  On 27 December 2024, Mother timely appealed the adjudication order[3] and the Order.

---

[1] A stipulated pseudonym is used to protect the identity of the child.  *See* N.C. R. App. P. 42.

[2] Robbie was also adjudicated neglected, but this is not at issue on appeal.

[3] Mother makes no arguments regarding the adjudication order.

## II.    RIL Orders

Because Mother is challenging the trial court's judicial notice of the RIL orders as part of the factual basis for its determination that "aggravating circumstances" exist under North Carolina General Statute Section 7B-901, we begin with Mother's second issue on appeal: "The trial court erred in taking judicial notice of RIL [o]rders for purposes of making its factual findings and conclusions in its . . . Order."  Mother contends that the trial court should not have relied on the RIL orders in any manner for purposes of the disposition or permanency planning hearing.

At the beginning of the hearing, DSS asked for the trial court to take judicial notice of the adjudication order entered on 18 January 2024 and the "two orders filed in 22 JRI 10," which were also filed on 18 January 2024.  The "two orders" were the RIL orders.  Neither Mother nor Father made any objection to judicial notice of the orders.  The trial court stated that it would take judicial notice. Mother's counsel asked whether the court was also taking "judicial notice of the court report or anything we haven't got to that point."  The trial court clarified that it was taking notice of only "the orders," and Mother's counsel—confirming, "The RIL orders"—stated he had "[n]o objection."

In *In re L.N.H*, our Supreme Court held that the respondent-mother who failed to object to the trial court's taking judicial notice of medical records previously admitted at another hearing in the case "waive[d] appellate review of the issue."  382 N.C. 536, 541, 879 S.E.2d 138, 142–43 (2022) (citation omitted).  Because Mother

raised no objection to the trial court's judicial notice of the RIL orders here, she has likewise waived appellate review.

### III.    Cessation of Reunification

We begin our analysis of Mother's next issue by clarifying what she is not arguing. She claims that "[t]he trial court erred in ceasing/eliminating reunification as a permanent plan at the consolidated initial disposition/permanency planning," because "the relevant evidence was insufficient to support the necessary findings, and the relevant findings were insufficient to support a conclusion, that aggravating circumstances existed." Mother thus does not challenge the trial court's abuse adjudication. To the contrary, she acknowledges that "[d]espite her actual innocence, [she] must concede the supported findings in adjudication as adequate to conclude Robbie's status as an abused . . . juvenile based on the inference of circumstances occurring between 17 January 2022 and 5 February 2022."

Nor does Mother challenge the permanency planning portion of the Order. Finding of fact 82 states that the trial court "has found aggravating circumstances for the Initial Dispositional portion of these hearings and reasonable efforts at reunification are no longer required for purposes of the Permanency Planning and Review portion of th[is] hearing." In other words, we need not reach ceasing reunification as to the permanency planning portion of the Order

Because Mother's challenge to ceasing reunification rests on the dispositional finding of aggravated circumstances, we need not address ceasing reunification as to

the Order's permanency planning portion. We thus review the trial court's decision to cease reunification efforts only under the Order's initial disposition portion.

North Carolina General Statute Section 7B-901 sets out the aggravating circumstances under which a trial court may make a determination that reasonable efforts will not be made for reunification in an initial disposition order. N.C. Gen. Stat. § 7B-901 (2023).

Section 7B-901 provides in pertinent part,

> (c) If the disposition order places a juvenile in the custody of a county department of social services, the court shall direct that reasonable efforts for reunification as defined in G.S. 7B-101 *shall not be required if the court makes written findings of fact* pertaining to any of the following, unless the court concludes that there is compelling evidence warranting continued reunification efforts:
>
> (1)      A court of competent jurisdiction determines or has determined that aggravated circumstances exist because the parent has committed or encouraged the commission of, or allowed the continuation of, any of the following upon the juvenile:
>
> . . . .
>
> b. Chronic physical or emotional abuse.
>
> . . . .
>
> f. Any other act, practice, or conduct that increased the enormity or added to the injurious consequences of the abuse or neglect.

N.C. Gen. Stat. § 7B-901(c) (emphasis added).

**A. Standard of Review**

Our review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings of fact and whether the findings support the conclusions of law. The trial court's findings of fact are conclusive on appeal if supported by any competent evidence. The trial court's dispositional choices—including the decision to eliminate reunification from the permanent plan—are reviewed only for abuse of discretion, as those decisions are based upon the trial court's assessment of the child's best interests.

*In re L.R.L.B.*, 377 N.C. 311, 315, 857 S.E.2d 105, 111 (2021) (citations, quotation marks, and brackets omitted).

## B. Findings of Fact

### 1. *Challenges to trial court's wording and characterization of facts*

Mother, using brief bullet points, challenges many of the Order's ninety-two detailed findings of fact.[4] We have considered each challenge, and for many of them, Mother argues mostly about the trial court's characterization of established facts. In finding of fact 58, for example, the trial court found that Mother "denied the serious physical abuse that" Robbie suffered. Mother contends that "[w]hile it is true [she] consistently denied her knowledge of or responsibility for Robbie's abuse, she did not deny the facts of the injuries he suffered and . . . ultimately came to accept and believe Father was responsible." So Mother wants to clarify that she denied responsibility for the abuse, not the existence of abuse itself. Such clarifications, however, do not

---

[4] The Order also incorporates the 74 "findings of fact from the [a]djudication [o]rder . . . . as if fully set forth."

change the fact that finding 58, and the trial court's interpretation, is supported by the evidence. *See In re K.W.,* 282 N.C. App. 283, 290, 871 S.E.2d 146, 152 (2022) ("A trial judge passes upon the credibility of the witnesses and the weight to be given their testimony *and the reasonable inferences* to be drawn therefrom." (citation and quotation marks omitted)).

In other challenges, Mother contests the weight and credibility of the evidence. But this is within the trial court's purview. *See id.* ("[I]t is within the trial court's discretion to determine the weight and credibility that should be given to all evidence that is presented during the trial."). For instance, in finding of fact 74, the trial court found neither Mother nor Father "exhibited any sympathy or remorse for" Robbie's injuries. In Mother's view, this "is outrageous." Yet the trial court saw Mother and Father over multiple days and was allowed to make "reasonable inferences" based on what it saw; here, it did not see sympathy or remorse, even if Mother believes that she exhibited these emotions. *Id.*

Mother also challenges certain findings of fact but leaves unchallenged other findings establishing the same facts. She contests finding 50, which states that "[b]oth Respondent Parents suffered from substantial mental health issues at the time of [Robbie's] birth and in February 2022." But she does not challenge finding 33 from the incorporated adjudication order, which addresses her mental health in much greater detail:

> 33. Respondent Mother was suffering from mental health

issues in January, 2022. She was feeling sad, anxious, out of control and irritable and having thoughts of harming herself. On January 28, 2022 Respondent Mother reported self-cutting on her ankles. Respondent Mother was not compliant with taking prescribed medication for her mental health issues.

Accordingly, we need not examine each challenged finding in this opinion. We have considered each and address below only those challenges that go beyond attacking the trial court's wording or its assessment of credibility and the weight of the evidence.

### 2. *Finding of fact 46*

We analyze Mother's challenge to finding of fact 46. That finding states that "[b]oth parents pled guilty to the criminal charges of Contributing to the Delinquency of a Minor on December 19, 2023. Both admitted culpability in knowingly causing, encouraging, and aiding [Robbie] to have multiple broken bones whereby he could be adjudicated abused and neglected." Mother argues that "[t]here was no evidence that [she] 'admitted to culpability in knowingly causing, encouraging and aiding [Robbie] to have multiple broken bones whereby he could be adjudicated abused and neglected.'" She further asserts that "a signed plea transcript was not admitted" as evidence, and "no witness testified to the" facts as stated in the finding.

The evidence shows that Mother pled guilty to a charge of contributing to the delinquency of a minor. The transcript confirms that a DSS court report was admitted as an exhibit, which states that

> [Mother] pleaded guilty to misdemeanor contributing to the delinquency of a minor and was placed on 120 days unsupervised probation and the stipulation of this probation is that she adheres to the recommendations of the Department related to the juvenile case. *The charging language listed in the body of the misdemeanor statement of charges states that . . . [Mother] did knowingly cause, encourage. and aid [Robbie], age 3 months old, a juvenile within the jurisdiction of the court, to be in a condition, multiple broken bones, whereby the juvenile could be adjudicated abused and neglected.*

(Emphasis added.) (Quotation marks omitted.) Finding 46 is supported by the evidence.

### 3. *Finding of fact 47*

We also address Mother's challenge to finding 47 because it concerns the word "chronic"—a term relevant to the trial court's "aggravating circumstances" finding, and one for which the trial court took judicial notice of a definition at Mother's request. Finding 47 states: "Three-month-old [Robbie] suffered chronic physical abuse that persisted over his entire life." Mother contends that any abuse was not "chronic" and did not "persist[ ] over [Robbie's] entire life" because the evidence shows, at most, abuse "within a one to two week period near the time of the February 6 hospital visit." (Quotation marks omitted.)

At the hearing, Mother's attorney admitted an exhibit with the definition of "chronic." And at Mother's request, the trial court took judicial notice of the definition:

chronic adjective

- 9 -

. . .
1 a : continuing or occurring again and again for a long time
. . .
  b : being, providing, or requiring long-term medical care
(as for a chronic disease)
. . .
2 a : always present or encountered
. . .
  b : being such habitually

This Court has interpreted "chronic" abuse in this same context—dealing with

a very young infant over a brief time period—and rejected the argument that only

two occasions of abuse could not be "chronic":

> We likewise find no merit in respondent-father's contention
> that the factual findings here do not support the conclusion
> that Ben suffered "chronic" physical abuse because the
> child's injuries were inflicted over the course of only two
> months and consisted of only two injuries—noting the
> broken ribs. Although respondent-father cites *In re V.S.O.*
> for the proposition that the term chronic, although not
> defined in section 7B, is commonly defined as lasting a long
> time or recurring often, we find that case unhelpful here
> because that Court upheld the district court's
> determination that a four-month-old juvenile had suffered
> chronic physical abuse where evidence indicated that the
> abuse persisted over the juvenile's entire life.

*In re B.L.M.-S.*, 294 N.C. App. 44, 50, 901 S.E.2d 687, 692 (2024) (citation, quotation

marks, ellipses, brackets, and emphasis omitted).

Moreover, in *In re NN*, this Court determined that only one instance of injury

did not qualify as "chronic" abuse. *See* 296 N.C. App. 159, 173, 907 S.E.2d 430, 441

(2024) (holding that the trial court's "findings show a single, albeit severe, incident of

physical abuse while [the child] was in the sole care of [the] [p]arents" did not support

the court's "conclusion that 'aggravated circumstances exist based upon the abuse and neglect of this infant child by her parents' under . . . Section 7B-901(c)(1)(b)"). And we contrasted the injuries inflicted on more than one occasion in *In re B.L.M.-S*:

> In *In re B.L.M.-S.*, 294 N.C. App. 44, 50, 901 S.E.2d 687, 692 (2024), this Court noted that the term chronic, although not defined in [S]ection 7B, is commonly defined as lasting a long time or recurring often. This Court affirmed a dispositional order in which the district court concluded that reunification efforts were not required due to a finding of chronic abuse where the findings of fact included that the two-month-old juvenile had unexplained, non-accidental injuries including two rib fractures at different stages of healing, indicating that the *injuries were inflicted at different times*, and the father admitted that, out of frustration, he had squeezed the juvenile and shaken him *on more than one occasion* and also had tossed the child into the air and fumbled or dropped him. These findings supported the court's conclusion that the respondent-father committed or encouraged and/or allowed the chronic physical abuse of the juvenile.

*Id.* at 172, 907 S.E.2d 430, 440–41 (citations, quotation marks, and brackets omitted) (determining injury was not chronic because it occurred only once).

Here, the most relevant finding regarding more than one occurrence is finding 43: "Ann Parsons and Dr. John Wright, both with Tedi Bear, concluded that [Robbie] had sustained non-accidental injuries likely inflicted *during at least two separate and possibly several different episodes of physical abuse.*" (Emphasis added.) A finding that merely recites what a witness said while testifying is not itself a proper finding of fact on the substance of the testimony. But the trial court may identify the source of the evidence, so long as its findings also make clear that the court resolved the

factual issue rather than just summarizing the testimony:

> [R]ecitations of testimony do not constitute findings of fact absent an indication concerning whether the trial court deemed the relevant portion of the testimony credible. There is nothing impermissible about describing testimony, so long as the court ultimately makes its own findings, resolving any material disputes.

*Shomette v. Needham*, 298 N.C. App. 400, 406, 915 S.E.2d 39, 44 (2025) (citations, quotation marks, ellipses, and emphasis omitted). Here, the trial court's other findings show that it found Parsons and Wright's testimony credible: it found that Robbie was chronically abused.

Thus, even though Mother may consider her definition of "chronic" to be more "accurate," the trial court properly followed our caselaw in determining chronic abuse. Although the court took judicial notice of Mother's proffered "chronic" definition, it was not bound to apply that definition, as Mother contends it should have been. *See generally K.W.*, 282 N.C. App. at 290, 871 S.E.2d at 152 (noting that the trial court determines the weight and credibility evidence is to be given). And even if Mother had prevailed on her challenge to finding 47, other unchallenged findings preceding support the trial court's chronic abuse finding. *See generally In re K.H.*, 281 N.C. App. 259, 266, 867 S.E.2d 757, 762 (2022) ("Unchallenged findings of fact are deemed supported by the evidence and are binding on appeal."). These unchallenged findings include:

> 8. That among the issues that led to the removal of the juvenile were: the juvenile being 3 months old and in the

sole care of both of the Respondents when the juvenile suffered nonaccidental injuries for which no explanation has been provided that has been accepted by a medical provider; said injuries including, but not being limited to, a bruise under his chin, a bruise on the side of his face, swelling and redness of his right shoulder, swelling and tenderness in the juvenile's right upper arm and decreased movement of his right shoulder, the juvenile not being able to move his arm and crying when his arm was touched by a medical provider, fractures in both of the juvenile's shoulders, a fracture in his lower left tibia, a fracture in his thigh, and two rib fractures; Respondent Father suffering from anger issues at the time of the juvenile's injuries; neither Respondent providing a reasonable explanation of causation for the numerous injuries and Respondent Mother's explanation being inconsistent with the injuries the juvenile sustained; genetic testing being done that ruled out a genetic cause for the multiple bone fractures suffered by the juvenile; the juvenile being a pre-mobile infant who could not have caused these injuries to himself; the juvenile's injuries being consistent with child abuse in a pre-mobile infant; Respondents suffering mental health issues at the time of the injuries; and Respondent Mother being informed about safe sleeping with the juvenile and Respondent Mother, at the very least, admitting that she was not safe sleeping with the juvenile on the day during which some of the injuries occurred.

. . . .

35.    On February 6, 2022, Respondent Parents took [Robbie], now three months old, to the emergency room at Carteret Health Care. They reported that his right shoulder was swollen.

36.    Examination by medical professionals revealed that [Robbie] had a bruise under his chin, a bruise on the side of his face and swelling, bruising and redness of his right shoulder. [Robbie] exhibited pain when his right arm was moved. [Robbie] had a fractured humerus.

37.    Carteret County DSS was notified and met with Respondent Parents at the hospital.

38.    Respondent Mother told the social worker that on February 5, 2022 she was taking a nap with [Robbie] on the couch and his face became lodged under a pillow and she had to move the pillow from his face and pulled him up by his right arm and his arm chicken winged. [Robbie] cried for a brief moment but did not show any signs of pain in the arm after that.

. . . .

40.    The physician that treated [Robbie] at the emergency room on February 6, 2022 did not believe that Respondent Mother's chicken wing explanation for this injury was consistent with the nature of the fracture of the humerus.

41.    [Robbie] was transferred to Vidant Medical Center in Greenville, NC. A CME was conducted at Tedi Bear Advocacy Center and Vidant Medical Center to determine a medical explanation for [Robbie's] injuries.

42.    A skeletal survey revealed that [Robbie] had a humeral fracture in both shoulders, a fracture in his left tibia, and fractures of two ribs on his left side. Additionally, [Robbie] had a bruise under his chin, a bruise on the side of his face, a bruise on his right shoulder, and a bruise on his left side.

43.    Ann Parsons and Dr. John Wright, both with Tedi Bear, concluded that [Robbie] had sustained non-accidental injuries likely inflicted during at least two separate and possibly several different episodes of physical abuse.

44.    Neither Respondent Mother nor Respondent Father have provided any plausible explanations for any of the numerous injuries that [Robbie] sustained.

45.    Respondent Parents were the only caregivers for

[Robbie]. Neither Respondent Parent has admitted to inflicting any of the injuries on [Robbie]. Since February 6, 2022, when [Robbie] was removed from Respondent Parents' home[,] [Robbie] has not had any unexplained bruises or suffered additional bone fractures.

Finding 47 is supported by the evidence.

Further, as another way of challenging finding 47, Mother contends that before the trial court, DSS and the guardian *ad litem* (GAL) did not argue "the existence of the 'chronic' aggravated circumstance." Mother is correct that at the hearing, DSS focused its arguments on aggravated circumstances under North Carolina General Statute Section 7B-901(c)(l)f—"[a]ny other act, practice or conduct that increased the enormity or added to the injurious consequences of the abuse or neglect"—and it did not claim to be relying on "chronic physical abuse." N.C. Gen. Stat. §§ 7B-901(c)(1)f, b. For example, Ms. Turnage, the "permanency planning supervisor with" DSS who helped prepare the court report for the hearing, acknowledged on cross-examination that DSS was not alleging "chronic physical or emotional abuse:"

> Q. So does, is the Department alleging that there's been chronic physical or emotional abuse?
>
> A. No.
>
> Q. And is the Department - - so it would need to be any other act, practice, or conduct that increase the enormity or the, or added to the injurious consequences of the abuse or neglect; correct? That catchall?
>
> A. Correct.

In *L.N.H.*, the trial court found that "there [we]re aggravating circumstances

that exist[ed]" but did not explain what those circumstances were, so our Supreme Court held that the finding was insufficient under North Carolina General Statute Section 7B-901(c). 382 N.C. at 547, 879 S.E.2d at 146 (quotation marks omitted). The Court also stated that "the evidence presented in th[e] case c[ould] [not] support a finding of any of the aggravated circumstances listed in [Section] 7B-901(c)(1)a–e." *Id.* at 547, 879 S.E.2d at 147. DSS argued that the evidence would support a finding under subsection Section 7B-901(c)(1)f—"[a]ny other act, practice, or conduct on the part of the respondent-parent that increased the enormity or added to the injurious consequences of the abuse or neglect"—based on evidence that the child's feet were severely burned while in the mother's care, that the mother drank alcohol and then lacked any memory of hurting the child, the child was left alone on the front porch of the mother's house, and the injuries were so severe as to require hospitalization and continued medical care after leaving the hospital. *Id.* at 547, 879 S.E.2d at 147 (quotation marks omitted). The Supreme Court determined that these facts were all part of the abuse adjudication, so they could not "serve as conduct that increased the enormity or added to the injurious consequences of that conduct" and thus did not support "a determination that any of the aggravating factors specified in [Section] 7B-901(c)(1) exist[ed]" in that case. *Id.* at 548, 879 S.E.2d at 147 (quotation marks and brackets omitted).

But the Court did not end its analysis there. *See id.* Instead, it remanded for additional findings of fact to address another possible basis for ceasing reunification

efforts under Section 7B-901(c):

> On the other hand, we do believe that there is sufficient evidence in the record to support a determination by the trial court that reunification efforts were not required pursuant to [Section] 7B-901(c)(3)(iii), which allows the cessation of reunification efforts in an initial dispositional order in the event that the parent has committed a felony assault resulting in serious bodily injury to the child. . . . Although the trial court did not make the findings necessary to permit the cessation of reunification efforts with respondent-mother based upon [Section] 7B-901(c)(3)(iii), it certainly could have done so had it chosen to make such a determination.

*Id.* (quotation marks and brackets omitted).

Thus, under *L.N.H.*, DSS did not have to argue in support of a particular ground in Section 7B-901(c) for the trial court to find "aggravat[ing] circumstances" under that ground. N.C. Gen. Stat. § 7B-901; *see L.N.H.*, 382 N.C. at 548, 879 S.E.2d at 147. If the evidence supports findings under any subsection of Section 7B-901, the court may make those findings and reach the conclusion of law to cease reunification efforts based on that factor. *See* 382 N.C. 536, 879 S.E.2d 138. So although DSS relied on subsection 7B-901(c)(1)f at the hearing, the trial court did not err by making findings based on evidence of "chronic physical abuse" under subsection 7B-901(c)(1)b and ceasing reunification efforts on that ground. The trial court's conclusions are supported by its findings of fact and are legally correct under Section 7B-901(c).

### 4. *Findings of ultimate fact*

Mother also argues that some of the Order's findings of fact are actually conclusions of law. Specifically, Mother posits that findings 48, 49, 81, and 82 are conclusions of law and that they are not supported by "the evidence or the findings of fact":

> 48. Aggravating circumstances as set forth in [Section] 7B-901(c) exist in this matter.
>
> 49. Respondent Parents have committed or encouraged the commission of and/or allowed the continuation of, chronic physical abuse of [Robbie] as set forth in [Section] 7B-901(c)(l)b.
>
> . . . .
>
> 81. Respondent Mother's and Respondent Father's acts, practices, and conduct increased the enormity or added to the injurious consequences of the abuse and neglect [Section] 7B-90l(c)(l)f.
>
> 82. The Court has found aggravating circumstances for the Initial Dispositional portion of these hearings and reasonable efforts at reunification are no longer required for purposes of the Permanency Planning and Review portion of the[] hearing.

DSS and the GAL argue that these challenged findings are findings of ultimate fact and not conclusions of law. This Court has noted that

> There are two kinds of facts: Ultimate facts, and evidentiary facts. Ultimate facts are the final facts required to establish the plaintiff's cause of action or the defendant's defense; and evidentiary facts are those subsidiary facts required to prove the ultimate facts.

*Kelly v. Kelly*, 228 N.C. App. 600, 607, 747 S.E.2d 268, 276 (2013) (citation omitted).

In *L.N.H.*, our Supreme Court considered the existence of "aggravating circumstances" as a question of fact, not a conclusion of law:

> Given that respondent-mother has challenged the sufficiency of the evidence to support the trial court's finding of aggravated circumstances under [Section] 7B-901(c), we review those findings to determine if they were supported by competent evidence.

382 N.C. at 546–47, 879 S.E.2d at 146; *see In re A.W.*, 377 N.C. 238, 251–53, 856 S.E.2d 841, 852–53 (2021) (addressing the same issue presented in *L.N.H.* as an issue of fact).

Findings 48, 49, and 81 are findings of ultimate fact, and for the reasons discussed above in regard to the other findings of fact, they are supported by the evidence. The previous findings of evidentiary facts explain the reasons for the trial court's ultimate finding of "chronic physical abuse" as an "aggravating circumstance." And although finding 81 rests on a different statutory basis—Section 7B-901(c)(1)f— we have already upheld the trial court's aggravating circumstances determination under Section 7B-901(c)(1)f, so we need not address finding 81.[5]

Finally, finding 82 explains that the trial court "found aggravating circumstances" in the "Initial Dispositional portion of these hearings," so "reasonable

---

[5] Mother also notes that in the adjudication order, the trial court found in finding 69 that "[t]he [c]ourt does not find at adjudication aggravating circumstances pursuant to [Section] 7B-90l(c)(l)(f)." Mother contends the trial court acted under a "misapprehension of the law" that it "was not permitted to make the findings at adjudication." Because the trial court properly found "chronic physical abuse" as an aggravating factor, we need not address Mother's argument as to Section 7B-90l(c)(l)f.

efforts at reunification are no longer required for purposes of the Permanency Planning and Review portion of the[] hearing[.]" Finding 82 does not address any new fact or law but simply repeats the previous finding of aggravating circumstances and highlights why the trial court did not address this issue in the permanency planning portion.

## C. Conclusions of Law

Mother also challenges conclusions of law 10 and 11 as unsupported by the findings of fact. These conclusions state:

> 10. Reasonable efforts at reunification are not required with either Respondent Mother or Respondent Father. Aggravated circumstances exist pursuant to [Section] 7B-901(c)(l)b in that Respondent Mother and Respondent Father have committed, or encouraged the commission of, or allowed the continuation of, chronic physical abuse upon the juvenile. Additionally, aggravated circumstances exist pursuant to [Section] 7B-90I(c)(l)f in that Respondent Mother's and Respondent Father's acts, practices and conduct increased the enormity or added to the injurious consequences of the abuse and neglect.

> 11. That the permanent plan for the juvenile should be guardianship with a concurrent plan of custody. This plan is in the best interest of the minor juvenile. This plan is consistent with the juvenile's health and safety. The Department should make reasonable efforts to achieve this plan.

As noted above, the trial court determined that aggravating circumstances existed under both Sections 7B-901(c)(1)b and (c)(1)f—because we have determined that findings on Section 7B-901(c)(1)f were proper, we address conclusion 10 based

only on the findings about Section (c)(1)b, "chronic physical abuse."

Mother repeats many of her arguments as to the finding of facts in her challenge to the conclusions of law. As mentioned, the findings of "chronic physical abuse" and "[a]ggravating circumstances" are findings of fact, not conclusions of law. Conclusion of law 10 repeats the findings upon which the trial court based its decision under Section 7B-901(c)(1)b.

A conclusion of law is reached "by an application of fixed rules of law." *See Woodard v. Mordecai*, 234 N.C. 463, 472, 67 S.E.2d 639, 645 (1951) ("Whether a statement is an ultimate fact or a conclusion of law depends upon whether it is reached by natural reasoning or by an application of fixed rules of law."). The actual conclusion of law is that "Reasonable efforts at reunification are not required with either Respondent Mother or Respondent Father"; this portion of conclusion 10 applies the law stated in Section 7B-901(c) to the facts of this case. So we review only to determine if the findings of fact support the trial court's conclusion that reasonable efforts at reunification are not required under Section 7B-901.

Mother stresses that the trial court's own findings indicate that it "was unable to determine if Mother inflicted or allowed the injuries on Robbie." She relies on finding of fact 75, quoted in italics below, but she does not address the findings right before and after that finding:

> 73. For all of the time from February 6, 2022 until Respondent Father separated from Respondent Mother in February 2024, Respondent Mother continued to live with

Respondent Father and engage in marital relations with him despite her claim that she had suspected him from February 2022 for inflicting the injuries on [Robbie].

74. Neither Respondent Mother nor Respondent Father have exhibited any sympathy or remorse for the serious injuries [Robbie] endured.

75. *The Court is unable to determine which Respondent Parent or if both Respondent Parents inflicted the numerous injuries on [Robbie].*

76. The Court has concerns for [Robbie]'s safety and for further harm and abuse in either parent's home as neither parent has taken responsibility for [Robbie]'s injuries.

77. Respondent Mother wants [Robbie] to be placed back in her custody with Respondent Father having visitation despite her claims that she has suspicions that Respondent Father inflicted the injuries on [Robbie].

Taking finding 75 in context, the trial court was expressing the dilemma any judge faces when confronting claims of serious non-accidental injuries to a very young child who has been in the sole care of the parents, with no plausible explanation other than abuse by one or both of them. *See e.g. In re M.T.*, 285 N.C. App. 305, 306-07, 877 S.E.2d 732, 736 (2022) ("Here, as in most cases involving life-threatening nonaccidental injuries to a baby, there is no direct evidence of exactly what happened. A baby cannot tell anyone what happened, and no one, other than someone who hurt the baby, saw what happened. Trial courts must often make these difficult and momentous decisions based upon circumstantial evidence and evaluation of credibility and weight of the evidence.").

As to conclusion 11, it is the logical application of the law of Section 7B-901(c)(1)b and the preceding conclusion of law.

## IV.     Conclusion

Mother waived her challenge to the trial court's judicial notice of the RIL orders by failing to object—either to their admission or the court's taking judicial notice—at the hearing.  Further, competent evidence supports the trial court's findings of fact, and those findings support its conclusion of law that reasonable reunification efforts should be ceased.  We affirm the adjudication order and the disposition and permanency planning order.

AFFIRMED.

Judges ARROWOOD and WOOD concur.